LEMP HUNTING & FISHING CLUB, Appellant, v.
LORD B. COTTLE et al., Respondents.

St. Louis Court of Appeals, April 8, 1913.

1. Lemp Hunting and Fishing Club v. Hackman et al., *ante*, followed.

2. SPECIFIC PERFORMANCE: Enforcement Against Grantee of Covenantor. A purchaser of land, who acquired it with notice of a lease and received rents and profits thereunder and acquiesced therein, will be compelled to specifically perform an agreement in the lease to renew.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett, Judge.*

REVERSED AND REMANDED (*with directions*).

*Wm. A. Dudley* and *Eugene Buder* for appellant.

*Charles Martin* and *R. L. Sutton* for respondents.

ALLEN, J.—The issues in this case are substantially the same as in the companion case of Lemp Hunting & Fishing Club v. Hackmann et al., decided at this term.

The suit is in equity for specific performance of a like covenant of removal contained in a lease of substantially the same character as that in the case just referred to, and covering lands in the same vicinity. The land, on May 1, 1900, was owned by defendant Cottle and one John W. Pollard. The lease was executed to plaintiff as of said date by the defendant Cottle and Mary Cottle, his wife, and said John W. Pollard, and his wife, Jennie Pollard; the rental reserved therein being seventy-five dollars per year; and was duly recorded on June 18, 1900. On or about August 19, 1902, the defendant William L. Pollard acquired a portion of the land covered by the lease,

by warranty deed from defendant Cottle and John W. Pollard, and their wives.

In January, 1903, John W. Pollard died intestate, leaving surviving him defendants Jennie Pollard, his wife, George M. Pollard, Robert E. Pollard, Ray H. Pollard, Mary Lee Pollard and Thelma Pollard, his children. Letters of administration were taken out on his estate, and defendant Jennie Pollard, the widow, duly elected to take a child's share thereof.

The action is against the surviving lessor, Lord B. Cottle, William L. Pollard, the purchaser of a portion of the land, and Laura H. Pollard, his wife, and the above-named heirs of the deceased lessor John W. Pollard, together with Eula Pollard, wife of defendant George M. Pollard, one of said heirs. The petition is in substantially the same form as in the companion case above referred to, except that it sets up the facts respecting the acquisition of a portion of the property by defendant William L. Pollard, and avers that the plaintiff has no way of determining how the rent should be apportioned as between this defendant and the defendants owning the portion of the property not acquired by him. The petition avers the payment into court of seventy-five dollars as rent for the first year of the renewal term of the lease, to be apportioned among the parties defendant as the court may decree, asking that the owners of the respective portions of the premises be compelled to interplead and establish their respective interests in said rental.

One answer is filed by all of the defendants, except William L. Pollard, his wife, Laura Pollard, and Thelma Pollard. The answer of these defendants sets up facts alleged to constitute fraud perpetrated by plaintiff upon the lessors, John W. Pollard and Lord B. Cottle, in obtaining the lease of May 1, 1900; averring that said lessors had executed a prior lease to plaintiff in 1897, granting to it hunting and fishing privileges on a portion of the land in question, known

as Brown's Lake, for a period of ten years; that the lease of May 1, 1900, was procured by plaintiff's agents by fraudulent representations that it was a lease of the same character as that of 1897, and that the execution of a new lease was merely for the purpose of extending the time, so that the same would expire at the same time as leases upon other lands in the vicinity; and that the instrument sued on is therefore not the contract of said John W. Pollard and Lord B. Cottle. The further defense of *ultra vires* is pleaded; also the defense that members of plaintiff club violated the law by hunting and fishing on the land on Sunday, the latter defense being, however, abandoned at the trial.

Defendant William Pollard filed his separate answer, admitting that he purchased a portion of the land in question and owned the same. His answer then pleads that the land so purchased by him lies in the Mississippi bottom, and at the date of the lease sued on was wet, swampy and unfit for cultivation; but that since his acquisition thereof, experiments on other such lands have shown that by drainage and levees such lands can be made to yield large crops; that this defendant has been prevented by restrictions and conditions in plaintiff's lease from reclaiming the land; that plaintiff cannot use it for purposes of profit, and that a renewal of the lease would prevent him from ditching and draining it, etc., and would be a great hardship and injury to him, and would be inequitable and unjust.

The answer of Thelma Pollard, filed by her guardian *ad litem,* is a general denial. Defendant Laura Pollard filed no answer.

Plaintiff's reply to the answer of the defendants, excepting William L. Pollard, is substantially the same as its reply in the companion case above referred to. To the answer of defendant William L. Pollard, plaintiff replied that the lease in question was duly re-

corded prior to the acquisition of a portion of the property by this defendant, and that after acquiring said portion of the property this defendant accepted rents and profits from plaintiff under the lease and fully acquiesced therein; that he did not repudiate the lease, and that, in reliance thereupon, plaintiff entered into other leases upon near-by lands, assuming and incurring large obligations and responsibilities, and that the failure of this defendant to renew the lease for his portion of the land would cause much loss to plaintiff; plaintiff also pleading delay, negligence and laches on the part of this defendant.

At the close of the evidence, the plaintiff made the same offer with respect to the decree as was made in Lemp Hunting & Fishing Club v. Hackmann et al.; the court entered herein the same decree as was there entered, and plaintiff has appealed.

On the issue of fraud in obtaining the lease of 1900, defendants introduced in evidence the lease of 1897; defendant Cottle testified that, in obtaining the lease sued upon, plaintiff's agents told him that they wanted to renew the lease then in existence, so that it would expire with other leases; that his understanding was that it was just like the old one, and that he did not look at nor was it read to him. He testified, however, that plaintiff's agents furnished him a copy of it, which he kept, but did not look at until some years later, after the death of John W. Pollard, when he gave it to the latter's widow, Jennie Pollard.

On behalf of plaintiff, there was positive testimony that the lease was read, and re-read, to defendant Cottle and his wife, and that they evidently knew and understood its terms; that the lease was purposely drawn in the form sued upon, and that no effort whatsoever was made to conceal this fact, but that, on the contrary, pains were taken to see that the terms of the instrument were fully understood.

The land here differs somewhat from that involved in the companion case above referred to . There is considerable conflict in the testimony as to what part of it is susceptible of cultivation. This pertains particularly to the land purchased by William L. Pollard, who testified that since the execution of the lease he had drained and cultivated a portion of his land not in cultivation when the lease was executed. It was shown, however, that there had been no interference by plaintiff with the use and cultivation of the land, but that plaintiff had simply exercised rights with respect to hunting and fishing.

Plaintiff's evidence also went to show that there had been no complaint at any time by any of the owners of the land with respect to the terms of the lease, until efforts were made to renew it, and then none except that more rent should be paid.

We see no reason to make a distinction between this case and that of Lemp Hunting & Fishing Club v. Hackmann et al., supra. After a careful examination of the record we find neither fraud nor mistake; neither is the defense of *ultra vires* here available. The land differs somewhat in character from that involved in the other case, but, under the circumstances of the case, there is nothing to indicate that it would be inequitable to specifically perform the covenant of renewal in the lease. The portion of the land purchased by defendant, William L. Pollard, was acquired by him with notice of the lease, and he has received rents and profits thereunder and acquiesced therein. Without repeating what was said in the other case with respect to the questions here involved, and for the reasons therein given, we think that specific performance should be decreed.

The judgment is reversed and the cause remanded to the circuit court with directions to enter a decree specifically enforcing the covenant of renewal in the

Hudspeth v. Railroad.

lease, in accordance with the prayer of plaintiff's petition; and unless defendants shall stipulate as to the apportionment of the rents, that they be compelled to interplead and establish their respective interests therein. *Reynolds, P. J.,* and *Nortoni, J.,* concur.