AETNA INSURANCE COMPANY et al. v. BEN C. HYDE, Superintendent of Insurance Department of State of Missouri, Appellant.—34 S. W. (2d) 85.

Court en Banc, January 8, 1931.

116

ATWOOD, J.—An opinion on the merits was promulgated in this case, sometimes referred to as the Aetna case, on May 21, 1926, and is reported in 315 Mo. 113, 285 S. W. 65. The purpose of this opinion is to indicate our ruling and grounds thereof on a petition filed herein at the April term, 1930, by the State of Missouri and Joseph B. Thompson, Superintendent of the Insurance Department of the State of Missouri, in the nature of a motion for an accounting of the excess premiums of insurance in said petition alleged to have been collected by respondents and for an order taking over the same and providing for their proper distribution. The petition prays "this court to make an order assuming jurisdiction of this fund and to order an accounting; to appoint a commissioner or commissioners to take charge of and to distribute this fund; to ascertain the amount due the policyholders of Missouri and to see that they receive what is due them; and that such insurance companies report to such commissioners or this court the amount of money which they have already paid policyholders of Missouri and the amount of money yet due such policyholders; to protect the interest of the State of Missouri and the policyholders of the State and to make any and all orders necessary to effectuate the opinions of the court and to see that complete justice is done between all parties."

Our record in the Aetna case shows that on October 9, 1922, the Superintendent of the State Insurance Department ordered a reduction in fire insurance rates of ten per cent in accordance with Section 6283, Revised Statutes 1919, to become effective November 15, 1922. On November 10, 1922, about 160 stock fire insurance com-

panies then doing business in this State commenced this proceeding in the Circuit Court of Cole County for a review of the order as provided by Section 6284, Revised Statutes 1919. The pleadings were made up, the cause referred, evidence heard and report of the referee containing his findings of fact and conclusions of law was filed. On December 22, 1924, the circuit court sustained the report of the referee and adjudged that the "rate reduction order, and each and every finding, order and direction therein, made and promulgated by the defendant Ben C. Hyde, Superintendent of the Insurance Department of the State of Missouri, under date of October 9, 1922 (wherein said defendant ordered a reduction of ten per cent in the rates charged by the stock fire, lightning, hail and windstorm insurance companies doing business in Missouri on fire, lightning, hail and windstorm insurance business written in the State of Missouri), be and the same is now cancelled, set aside and for naught held." Defendant appealed therefrom to the Supreme Court of Missouri where the judgment was reversed, as appears from our opinion on the merits hereinabove referred to and reported in 315 Mo. 113, 285 S. W. 65. The last paragraph of that opinion is as follows:

"Therefore, we conclude that on the evidence before the referee and the trial court the reduction order was authorized as it was made. The judgment of the trial court is, therefore, reversed and the proceedings dismissed."

Our judgment entry therein of May 21, 1926, omitting caption, is as follows:

"Now at this day, come again the parties aforesaid, by their respective attorneys, and the court being here now sufficiently advised of and concerning the premises, doth consider and adjudge that the judgment aforesaid, in form aforesaid, by the said Circuit Court of Cole County rendered, be reversed and annulled, and for naught held and esteemed, and that the said appellant be restored to all things which he has lost by reason of the said judgment. It is further considered and adjudged by the court that the said cause be, and the same is hereby, dismissed and that said appellant recover against the said respondents his costs and charges herein expended and have execution therefor. (Opinion filed.)"

On June 24, 1926, an order granting stay of execution for a period of nine months was made on application of respondents to enable them to apply to the Supreme Court of the United States for a writ of certiorari, and bond for $10,000 for all damages and costs "which the appellant may sustain by reason of said stay" was filed and approved. On June 29, 1926, appellant filed motion in this court to compel respondents to impound premiums collected or give additional security, which motion was "denied without prejudice" on August 6, 1926. On November 1, 1926, writ of cer-

tiorari was granted by the Supreme Court of the United States (273 U. S. 681), and upon hearing the writ was dismissed on the ground that no Federal question was presented. [Aetna Insurance Company v. Hyde, 275 U. S. 440, 448.] On February 10, 1928, mandate was issued from said court to the Supreme Court of Missouri, containing among other things, the following recital:

"It is now here ordered and adjudged by this court that the writ of certiorari in this cause be, and the same is hereby, dismissed with costs; and that the said appellant, Ben C. Hyde, Superintendent of the Insurance Department, etc., recover against the said respondents for his costs herein expended and have execution therefor, January 3, 1928. And the same is hereby remanded to you, the said Judges of the said Supreme Court of the State of Missouri, in order that such execution and proceedings may be had in said cause, in conformity with the judgment and decree of this court above stated, as, according to right and justice, and the Constitution and laws of the United States, ought to be had therein, the said writ of certiorari notwithstanding."

This mandate was filed here on February 13, 1928, and on March 7, 1928, at the October term, 1927, our mandate in form of certified copy of our judgment entry above was issued to the Circuit Court of Cole County, Missouri. Thereafter, on April 9, 1928, at the same term, the following order was here entered of record in said cause:

"It is ordered that this court retain jurisdiction in this cause for the purpose of making any other orders or judgments in the future which to the court shall seem just and proper."

Petitioners insist that by virtue of this last order we have jurisdiction to make the orders they now seek.

The general doctrine as to modification of a judgment by additional order or amendment made beyond the term at which the judgment was rendered is thus stated in 1 Freeman on Judgments (5 Ed.) sec. 166, p. 326:

"So far as the correction or amendment of the judgment or decree itself is concerned, at least in matters of substance, the power ceases with the end of the term, unless otherwise provided by statute." [Cf. also 15 R. C. L., sec. 124, p. 673; and 34 C. J. 210.] We have held that Section 1277, Revised Statutes 1919, does not provide otherwise. [Burnside v. Wand, 170 Mo. 531, 543, 71 S. W. 337, and cases cited.] Petitioners have cited no statute that does, and we are aware of none. The above doctrine is firmly established in this State. [Crawford v. C., R. I. & P. Ry. Co., 171 Mo. 68, 75, 66 S. W. 350; State v. Gartrell, 171 Mo. 489, 505, 71 S. W. 1045; State ex rel. v. Ellison, 267 Mo. 321, 327, 184 S. W. 963.] Of course, this general rule is subject to the well recognized qualification that if a court has retained and continued its jurisdiction in a partic-

ular cause by a reservation or other act, through a motion or other proceeding during the term, its power and control over its final judgment or decree survive the end of the term at which it was rendered or granted. [Collier v. Lead Company, 208 Mo. 246, 274, 275, 106 S.W. 971; Guinan v. Donnell, 201 Mo. 173, 208, 209, 98 S. W. 478, and cases cited.] But nothing of that kind was done in this case. It follows that our order of April 9, 1928, reciting that we "retain jurisdiction in this cause for the purpose of making any other orders or judgments in the future which to the court shall seem just and proper," is limited by this doctrine, because the order was made during the October term, 1927, long subsequent to May 21, 1926, which was during the April term, 1926, when our final judgment herein was rendered and entered of record. The jurisdiction of this court to make "any other orders or judgments" in this case which to it should "seem just and proper" ended with the term at which its final judgment was rendered. This would have been true even if the losing parties had not sought to have the judgment reviewed by a superior court, and the fact that we withheld our mandate to allow them to apply to the Supreme Court of the United States for writ of certiorari did not toll our jurisdiction to change the judgment in matters of substance beyond the end of the term. After the case was heard in that court it would have been our duty to modify our judgment, had its mandate so provided, not because of any jurisdiction in this court to make "any other orders or judgments" that to us should "seem just and proper," as petitioners contend, but in obedience to the mandate of the superior court. As a matter of fact, however, the writ of certiorari was dismissed. Our judgment then stood undisturbed but the term at which it was rendered had ended and it was beyond our power to retain jurisdiction to change or modify it in matters of substance, the broad language of our order of April 9, 1928, to the contrary notwithstanding. That order is without virtue to authorize the relief petitioners now seek.

Petitioners also contend that defendant, Superintendent of Insurance, is the representative of the policyholders as to all premiums covered by the reduction order in question and paid by them to plaintiffs after said order went into effect, that by the judgment of the circuit court defendant not only lost the right to enforce this order, but also lost the right as such representative to recover the excess premiums so paid, and that since our judgment is that the judgment of said circuit court "be reversed and annulled, and for naught held and esteemed, and that the said appellant be restored to all things which he has lost by reason of said judgment," we should now assume jurisdiction of this fund, order an accounting and make the additional orders prayed, to effectuate restitution due appellant as a consequence of our reversal.

An appellant's right of restitution on reversal of judgment is well recognized. [Gott v. Powell, 41 Mo. 416, 420; Railroad v. Brown, 43 Mo. 294; Lanyon v. Chesney, 209 Mo. 1, 9, 10, 106 S. W. 522; Hurst Automatic Switch Co. v. Trust Co., 291 Mo. 54, 68, 236 S. W. 58, 62; Northwestern Fuel Co. v. Brock, 139 U. S. 216, 219; Bank of United States v. Bank of Washington, 6 Pet. 8, 8 L. Ed. 299; 2 Freeman on Judgments (5 Ed.) secs. 1167, 1168, 1171, 1172, 1177; Cowdery v. London & San Francisco Bank, 96 Am. St. 115, 141, 142, 143, notes.] The general doctrine indicated by the weight of authority is thus stated in 2 Ruling Case Law, 296, 297:

"The reviewing court has inherent power, if it sees proper, to direct that restitution be made and it may issue such writs as it deems necessary for compelling obedience to its judgment or order. This power is rarely exercised, however, and, whether restitution is expressly directed to be made or not, the duty of taking and authorizing such steps as may be necessary to enforce the rights of the appellant arising from the reversal is usually confided to the trial court. The court whose judgment or decree is reversed and annulled, having by its own act occasioned the wrong, possesses an inherent and summary jurisdiction to afford the redress without reference to the peculiar nature of the controversy which it had erroneously determined. This is unquestionably true, and such is the settled practice where the same court abrogates its own erroneous decision; as in the case of a judgment reversed on a writ of error *coram nobis,* or an interlocutory decree reversed on a rehearing, or a final decree upon a bill of review. The principle is the same where the reversal, instead of being the act of the same court, is performed for it by an appellate forum; and in truth the judgment or decree of the latter is remitted to, entered upon the record of, and becomes both in form and effect the judgment or decree of, the former court. A statutory provision authorizing a reviewing court on reversal to make restitution of all property and rights lost by the erroneous judgment does not exclude the court below from exercising the same power. Moreover the fact that a judgment was reversed for want of jurisdiction does not prevent the reviewing or trial court from compelling restitution. . . .

"There is no doubt that the remedies existing for enforcing restitution in the same action or proceeding in which the reversed judgment or decree was made are cumulative merely, and that the appellant may resort to an independent action."

Even where, as in this case, an appellate court has entered a general order of restitution its enforcement may be left to the trial court, and this should be the practice unless facts disclosing the merits of the specific restitution sought are fully shown by the record. [Fleming v. Riddick's Ex'r., 50 Am. Dec. 119; McFadden v. Swinerton, 36 Ore. 336, 355; Mears v. Remare, 34 Md. 333, 335;

Horton v. Wilde, 74 Mass. 425, 427; Andrews v. Thum, 71 Fed. 763; 2 Freeman on Judgments (5 Ed.) 2426.] Nor is this inconsistent with Section 1516, Revised Statutes 1919, relating to execution of our judgments. However, dismissal of the proceeding by the appellate court and its failure to remand the cause or direct restitution do not deprive the trial court of jurisdiction to restore to appellant any rights of which he was wrongfully deprived by its erroneous judgment. Cf. Fleming v. Riddick's Ex'r., supra, a leading case on the doctrine of restitution; and Lanyon v. Chesney, supra, holding that defendant, on reversal of a judgment under which plaintiff has obtained possession of property, is entitled to be restored to the possession thereof, notwithstanding plaintiff's dismissal of the action.

In support of their contention last above stated petitioners direct us to portions of appellant's abstract of the record showing that plaintiffs expressly pleaded a stipulation executed by the parties plaintiff and defendant herein on February 14, 1922, long prior to the commencement of this suit and in another case then pending in the Circuit Court of Cole County, alleging that defendant had breached certain provisions thereof, and subsequently introduced it in evidence over the strenuous objection of defendant. We quote the provision here pertinent, subdivision 4, as follows:

"That no injunction shall be applied for in said matter restraining the enforcement of said order, but pending such review and until the final determination of said cause in whatever court it may be finally lodged, the rates in force prior to the making of such order shall be collected by such insurance companies, and such insurance companies shall give bond, conditioned and in such amount as the court may direct, to refund to the assured any excess of premiums collected by them if such order of the Superintendent of the Insurance Department be finally sustained by decree or judgment of a court of last resort."

We have already observed that the foregoing provision was agreed upon in another case. In terms it is wholly prospective and the question arises, did plaintiffs in fact avail themselves of its benefits in this case by collecting premiums in violation of defendant's reduction order and contrary to Section 6284, Revised Statutes 1919? If so, by its very terms that fact would be evidenced by an appropriate order or judgment of the circuit court, but no such order or judgment appears to have been set forth in appellant's abstract of the record. Neither were any matters pertaining to the collection or refund of excess premiums preserved in the bill of exceptions, nor were any questions relative thereto presented in the briefs filed prior to submission. The only issues submitted, and hence the only ones we had jurisdiction to determine, were those growing out of the questioned validity of defendant's reduction order. It seems

clear that facts necessary for our proper determination of the merits of the specific restitution now claimed are not disclosed by the record brought here on appeal, and under the authorities above cited petitioners should be remitted to the trial court for its determination of their right to this form of relief in accordance with the facts there appearing, or to an independent action.

We think the cases chiefly relied upon by petitioners as supporting their view that we should order specific restitution are distinguishable from this case on account of record facts which we shall now mention. In Arkadelphia Co. v. St. Louis S. W. Ry. Co., 249 U. S. 134, 146, the court not only directly dealt with the repayment of excess rates paid, but in each decree appealed from it expressly reserved and retained unto itself jurisdiction of the subject-matter and parties. In B. & O. Railroad Co. v. United States, 279 U. S. 781, 786, the Supreme Court of the United States reversed the judgment below and remanded the cause. The only valid judgment remaining was that of the superior court and it became mandatory on the lower court to make that judgment effective. A similar distinction appears in Ex parte Lincoln Gas Co., 256 U. S. 512, 516, where the judgment was affirmed with modifications and cause remanded, and in Tift v. Southern Ry. Co., 159 Fed. 555, where judgment of the lower court had been affirmed in 206 U. S. 428. Our judgment in the instant case was never reversed or affirmed. The Supreme Court of the United States simply dismissed its writ of certiorari and remanded the case for such further lawful orders not inconsistent with its decree of dismissal as we might deem proper and have jurisdiction to make.

For the reasons above stated the petition or motion of petitioners herein is denied. In so ruling we, of course, do not hold that respondents are entitled to retain any premiums that may in fact have been collected by them in excess of the then lawful rate, or that such excess premiums may not be recovered in a proper proceeding by or in behalf of the policyholders from whom they have been collected.

All concur, except *White, J.*, who dissents.