STATE OF MISSOURI at the Relation and to the Use of ABEILLE FIRE INSURANCE CO. ET AL., Relators, v. NIKE G. SEVIER, Judge of the Circuit Court of Cole County.—73 S. W. (2d) 361.

Court en Banc, June 5, 1934.

*R. J. Folonie, Igoe, Carroll, Higgs & Keefe, Ragland, Otto & Potter, F. D. Silber* and *E. R. Morrison* for relators.

*Roy McKittrick,* Attorney-General, and *Gilbert Lamb,* Assistant Attorney-General, for respondent.

*John T. Barker, Floyd E. Jacobs* and *Glenn C. Weatherby,* Special Counsel for the Superintendent of the Insurance Department.

FRANK, C. J.—Prohibition: One hundred and forty stock fire insurance companies, relators herein, seek to prohibit respondent judge from enforcing a judgment for restitution rendered by him on May 26, 1933, under a motion filed by the Superintendent of Insurance asking restitution of certain excess fire insurance premiums alleged to have been collected by relators pending actions brought by them to review and set aside a rate reduction order made in October, 1922, by Ben C. Hyde, then Superintendent of Insurance, reducing fire, windstorm and hail insurance rates in Missouri ten per cent. Our provisional rule issued, to which respondent made return and relators moved for judgment on the pleadings.

The facts necessary to a determination of the questions raised may be summarized as follows:

On January 5, 1922, Ben C. Hyde, then Superintendent of Insurance, pursuant to statutory authority, ordered that fire, windstorm and hail insurance rates in Missouri be reduced fifteen per cent. The stock insurance companies affected by such order, brought suit in the Circuit Court of Cole County, seeking to enjoin the enforcement of said reduction order. While this action was pending the plaintiff companies and the Superintendent of Insurance stipulated and agreed that said injunction suit should be dismissed, the reduction order withdrawn, that not earlier than March 15, 1922, the Superintendent of Insurance should call a hearing to investigate the necessity for a reduction of insurance rates, and if on such investigation, he again ordered a reduction in rates, and the insurance companies were dissatisfied with such reduction, they would proceed to secure a review of such reduction order in the Circuit Court of Cole County. The stipulation, among other things further provided:

"That no injunction suit shall be applied for in said matter restraining the enforcement of said order, but pending such review and until the final determination of said cause in whatever court it may be finally lodged, the rates in force prior to the making of such order shall be collected by such insurance companies, and such insurance companies shall give bond conditioned and in such amount as the court may direct, to refund to the assured any excess of premiums collected by them if such order of the Superintendent

of the Insurance Department be finally sustained by decree or judgment of a court of last resort. That in such matter the question of the constitutionality of Sections 6283 and 6284, Revised Statutes of Missouri, 1919, shall not be raised, nor shall the legality of the hearing above provided for be questioned.''

Thereafter on October 9, 1922, the Superintendent of Insurance ordered that fire, windstorm and hail insurance rates in Missouri stand reduced ten per cent effective November 15, 1922. On November 10, 1922, the insurance companies, relators herein, proceeded by suit in the Circuit Court of Cole County, seeking a review of said reduction order. On the same day said circuit court made an order authorizing said companies, pending the review, to collect the rates of premiums in force prior to October 9, 1922, upon giving a bond in the amount of $500,000 with terms and security to be approved by the court. On the same day said insurance companies filed a bond as required by said order. In 1923 they filed an additional bond in the same amount. No further bonds were required or given. The suit to review the ten per cent reduction order went to judgment in the circuit court on December 22, 1924. The judgment of the circuit court set aside the ten per cent reduction order and the Superintendent of Insurance appealed to this court. On June 23, 1926, this court reversed the judgment of the circuit court and at that time entered judgment in said cause, a copy of which will appear later.

Thereafter the insurance companies applied for and obtained a writ of certiorari to the Supreme Court of the United States. Later, on January 3, 1928, that court dismissed the writ of certiorari. [Aetna Insurance Company v. Hyde, Superintendent, 275 U. S. 440.] Afterwards on February 14, 1928, the insurance companies filed separate actions in the United States District Court at Kansas City and obtained a temporary injunction in each case enjoining the Superintendent of Insurance and the Attorney-General from enforcing such reduction order. After an unsuccessful hearing of these injunction suits in the United States District Court (Aetna Insurance Company v. Hyde, 34 Fed. (2d) 185), the companies appealed to the United States Supreme Court where the judgment of the lower court was affirmed. [National Fire Insurance Company v. Thompson, 281 U. S. 331.] This judgment marked the end of the litigation over the reasonableness of the ten per cent reduction order.

On June 16, 1930, Joseph B. Thompson, successor to Ben C. Hyde, insurance commissioner, filed in this court a petition in the case of Aetna Insurance Company et al. v. Hyde, seeking to compel said insurance companies to restore the ten per cent excess premiums collected by them pending the litigation. This court on January 9, 1931, refused to take jurisdiction for the reasons stated in an opin-

ion handed down at that time. [Aetna Insurance Company et al. v. Hyde, 327 Mo. 115, 34 S. W. (2d) 85.]

Thereafter on February 18, 1931, said Thompson filed in the Circuit Court of Cole County in said case of Aetna Insurance Company et al. v. Hyde, a motion for restitution, being the motion upon which respondent based the orders and decrees and exercised the jurisdiction of which relators complain in the present prohibition proceedings.

On February 21, 1931, the insurance companies were given leave to plead to said motion within ten days. On February 26, 1931, relators filed petition and bond for removal of said motion to the United States District Court. After denial of said petition for removal, the record was certified to the United States District Court where on April 31, 1933, the cause was remanded to the Circuit Court of Cole County, where the motion was set for hearing on May 26, 1933. Relators filed what they styled, "return and answer to said motion." On the date last aforesaid the cause was heard by the circuit court and judgment of restitution was rendered against relators. Relators seek by this prohibition proceedings to prohibit the circuit court from enforcing said judgment for restitution on the ground that said court was without jurisdiction to render the judgment.

It has been finally adjudicated that relators owe and stand indebted to its policyholders for the ten per cent excess in premiums collected from them after the effective date of the ten per cent rate reduction order, which was November 15, 1922. [Aetna Insurance Company v. Hyde, 315 Mo. 113, 285 S. W. 65; Aetna Insurance Company v. Hyde, 34 Fed. (2d) 185; National Fire Insurance Company v. Thompson, 281 U. S. 331.]

In relators' suit to review the ten per cent rate reduction order, the Circuit Court of Cole County set such order aside. On appeal to this court we held that the facts justified the reduction in rates, and reversed the judgment of the circuit court. [Aetna Insurance Company v. Hyde, 315 Mo. 113, 285 S. W. 65.] Upon reversing the cause, we entered the following judgment therein:

"Now at this day again come the parties aforesaid by their respective attorneys and the court being here now, sufficiently advised of and concerning the premises doth consider and adjudge that the judgment aforesaid, in form aforesaid, by the said Circuit Court of Cole County rendered, be reversed and annulled and for naught held and esteemed, and that said appellant be restored to all things which he has lost by reason of said judgment. It is further considered and adjudged by the court that said cause be and the same is hereby dismissed and that said plaintiff recover against said respondents his costs and charges herein expended and have execution therefor.":

In due time our mandate was sent to the circuit court where the Superintendent of Insurance thereafter, in due time, filed a motion on behalf of the policyholders asking that relators be required to make restitution. Upon a hearing of that motion the circuit court ascertained the amount of excess premiums collected by each relator from and after November 15, 1922, the effective date of the rate reduction order, rendered judgment for said amounts with interest, and adjudged that relators make restitution by depositing in court the amounts adjudged to be due from them. The object of the present proceedings is to prohibit the circuit court from enforcing the judgment of restitution.

It is contended that the circuit court was without jurisdiction to entertain the motion for restitution.

Relators' theory is that when the circuit court rendered final judgment setting aside the reduction order without retaining jurisdiction for further proceedings, and when on appeal we reversed the judgment of the circuit court and dismissed the cause, the case was ended, the parties were out of court, and hence the circuit court was without jurisdiction for any purpose.

The exact question which relators are now presenting was decided contrary to their contention by this court en banc in the recent case of Aetna Insurance Company v. Hyde, 327 Mo. 115, 34 S. W. (2d) 85. That case involved the same rate reduction order and the same facts which are involved in this case. That case arose on a motion for restitution filed in this court. We denied the motion, not on the ground that relators should not be required to make restitution, but for other reasons which are not material here. However, in course of the opinion in that case we decided the question of jurisdiction which relators are presenting in this case. We there said:

"However, dismissal of the proceeding by the appellate court and its failure to remand the cause or direct restitution do not deprive the trial court of jurisdiction to restore to appellant any rights of which he was wrongfully deprived by its erroneous judgment."

Above case cites approvingly the case of Fleming v. Riddick's Exr., 50 Am. Dec. 119. The court there said:

"A judgment or decree when reversed is a mere nullity, and the party aggrieved has a right to be restored to what he has lost by reason of such erroneous decision. He is consequently entitled to such appropriate remedies as the law gives to one whose money or property is withheld by another, against his better right. But the court whose judgment or decree is reversed and annulled, having by its own act occasioned the wrong, possesses an inherent and summary jurisdiction to afford the redress, without reference to the particular nature of the controversy which it had erroneously determined. . . . The power of a court to repair the injury

occasioned by its own wrongful adjudication, is not derived from a mandate of the appellate forum, made upon rendering the judgment or decree of reversal, but is substantially the same which it exercises when its own process has been abused, or used without authority, by its suitors or ministerial officers. . . . When a judgment or decree for the defendant is reversed, then the appellate court in proceeding to render such judgment or decree as the court below ought to have rendered, gives to the plaintiff the relief to which he is entitled; but when a judgment or decree for the plaintiff is reversed, then the appellate court, in proceeding to render such judgment or decree as the court below ought to have rendered, dismisses, in appropriate language, the plaintiff's action or suit. In the latter case, there is no adjudication in the appellate court of the question of restitution, but the mandate for it follows as a declaration or designation of the legal effect of the adjudicated reversal and dismissal.''

A kindred question was determined by this court in the case of Lanyon v. Chesney, 209 Mo. 1, 106 S. W. 522. That case was before this court on a former appeal where a judgment in favor of plaintiff was reversed and the cause remanded. [Lanyon v. Chesney, 186 Mo. 540, 85 S. W. 568.] After the mandate reversing and remanding the cause reached the circuit court, plaintiff voluntarily dismissed the cause, paying all accrued cost. After the cause was dismissed, the defendant filed a motion to set aside the order of dismissal, to reinstate the cause, and for restitution of the premises. Plaintiff resisted this motion on the grounds that the dismissal of the cause divested the court of all jurisdiction in the premises as to any feature of the motion. The trial court held that plaintiff had a lawful right to dismiss his case, and for that reason refused to reinstate it, and overruled the motion as to all grounds except the one calling for restitution. Upon a hearing on that ground of the motion, the court rendered judgment awarding restitution, from which judgment an appeal was taken to this court. We affirmed the action of the trial court in awarding restitution after the cause had been dismissed. In doing so, we said:

''We entertain no doubt as to the right of defendants to have restored to them, as against the other parties to this action, any property or property rights of which they were deprived and which plaintiff acquired under the first judgment, whether by execution or otherwise, and that such right will not be in any way affected by plaintiffs' dismissal of their suit after obtaining possession of such property. . . . And this, too, without regard to the merits of the original cause of action or grounds of defense.''

It has been held that the reversal of a judgment for want of jurisdiction does not prevent either the reviewing or trial court from compelling restitution. [2 R. C. L. 296, 297; Aetna Insurance Com-

pany v. Hyde, 327 Mo. 115, 120, 34 S. W. (2d) 85.] In the suit to review the rate reduction order, neither the failure of the circuit court to recite in its judgment that jurisdiction was retained for further proceedings, nor the decree of this court reversing the judgment of the circuit court and dismissing the cause, robbed the circuit court of jurisdiction to award restitution. This is so because "The court whose judgment or decree is reversed and annulled, having by its own act occasioned the wrong, possesses inherent and summary jurisdiction to afford the redress." [2 R. C. L. 296, 297.]

It is settled law that upon the mere reversal of an erroneous judgment, without more, the appellant is entitled to have restored to him all property and property rights which he lost by reason of such erroneous judgment. Relators do not dispute this rule of law but contend that an appellant is driven to an independent action to obtain restoration, except in cases where the reviewing court which reverses the erroneous judgment either itself awards restitution or remands the case to the circuit court for that purpose. The contention in the instant case is that the Circuit Court of Cole County which set aside the rate reduction order, lost jurisdiction of that case by the granting of the appeal to this court, and when this court reversed the judgment of the circuit court and dismissed the cause without remanding it for any purpose, there was then no case pending in either court in which a motion for restitution could be filed.

We do not agree with relators' contention for reasons heretofore stated. But there is another reason why the contention is unsound. At the time this court reversed the erroneous judgment of the circuit court we had jurisdiction to enforce restitution but we did not see fit to exercise that jurisdiction. We sent our mandate to the circuit court. That mandate recites, in substance, that the judgment of the circuit court setting aside the rate reduction order is reversed; *that appellant be restored to all things which he lost by reason of said judgment,* and that said cause is dismissed. When the circuit court receives a mandate from this court, it is the plain duty of the circuit court to enforce that mandate. The recitation in the mandate that appellant be restored to all things which he had lost by reason of said judgment, amounts, in effect, to a specific direction to the circuit court to award restitution. Otherwise why adjudge that restitution be made, and why inform the circuit court by mandate that appellant be restored to his former position? It was the duty of the circuit court.to carry our mandate into effect. It could not perform that duty except by awarding restitution to appellant, because both our judgment and our mandate provide that such restitution be made.

Regarding relators' claim that the dismissal of the cause by us ended the case, and for that reason there was no pending case

in which a motion for restitution could be filed, it may be said that our dismissal of the cause, dismissed relators' alleged cause of action to review the rate reduction order, but it did not take the case out of court so as to deprive appellant of the right to move therein for restitution. We have so held. [Aetna Insurance Co. v. Hyde, 327 Mo. 115, 34 S. W. (2d) 85; Lanyon v. Chesney, 209 Mo. 1, 106 S. W. 522.] Especially is this true, in view of the fact that we specifically adjudged that restitution be made to appellant, before we adjudged that said cause be dismissed. For all the reasons heretofore stated, we hold that the circuit court had jurisdiction to entertain and determine the motion for restitution.

█ It is contended that the circuit court had no jurisdiction to order that relators make restitution in any manner other than that provided in the order made and entered by said court in the review suit on November 10, 1922. .

When the suit to review the rate reduction order was filed in the circuit court, that court, pursuant to a stipulation of the parties, made and entered of record an order, the pertinent parts of which read as follows:

"Now therefore it is by the court ordered that the plaintiffs be and they are hereby authorized, pending the review of said order and until the final determination of this suit, to collect the rates of premium in force prior to the making of said rate reduction order; provided, plaintiffs shall within five days from this date give bond, with terms and security to be approved by this court, or the judge thereof, in vacation, in the sum of Five Hundred Thousand ($500,-000.00) Dollars, to the defendant herein, for the use and benefit of all persons, firms and corporations to whom policies of fire, lightning, hail and windstorm, insurance covering property in this State may be issued by plaintiffs or any of them, on and after November 15, 1922, and prior to the entry of final decree in this case, conditioned that if said rate reduction order should be finally sustained by a final decree of court, then that each of the plaintiff insurance companies shall send notice by mail forthwith to each assured entitled to a refund of premium, as shown by its books, stating the amount of refund due and shall refund, within thirty days after its receipt of written demand by the party entitled thereto, the difference between the amount collected by such plaintiff as premium upon each policy of fire, lightning, hail and windstorm insurance, issued by such plaintiff between November 15, 1922, and the date of such final decree, covering property in this State, and the sum which such plaintiff would be entitled to collect as premium upon such policy according to the terms of said rate reduction order, demand for such refund to be made in writing either upon an authorized agent in this State of the company from whom such refund is due, or upon the Superintendent of the Insurance Department of this State, within ninety days after the sending of such a notice."

That part of the order authorizing relators to collect, pending the review suit, the rates of premium in force prior to the making of the rate reduction order, was invalid and non-enforceable when made, because in violation of Section 6284, Revised Statutes 1919, which provides that during the pendency of a suit to review a rate reduction order, the insurer shall not charge any rate or premium in excess of that fixed by the Superintendent of Insurance. However, as the insurance companies obtained the fruits of the invalid order by collecting, pending the review suit, the rates in force prior to the making of the rate reduction order, they are estopped to assert the invalidity of the order. The remaining part of the order which attempts to detail the manner in which the refund shall be made in event the rate-reduction order should be upheld, is of no effect for two reasons, (1) because neither the Superintendent of Insurance, nor the attorneys representing him, had authority to approve the making of such an order, and (2) because the order as made is void on its face.

Upon the rendition of the final judgment upholding the rate reduction order, it then became the duty of the insurance companies to restore to the policyholders the excess in premiums collected from them pending the review suit, without waiting for any demand to be made therefor. The only time limit upon the policyholders' right to enforce restoration is the Statute of Limitations, yet the effect of the court order upon which relators seek to stand, is to condition the right of the policyholders to a refund, upon their making written demand therefor within ninety days from the date a written notice of such refund is mailed to them by relators. Such an order is contrary to both the spirit and the letter of the law, and if enforced, would take from the policyholders rights which the law guarantees to them. The Superintendent of Insurance is a public official and represents the policyholders by virtue of his office and the laws defining his duties. His only authority in that behalf was to get for the policyholders their rights under the law. Neither he nor the attorneys representing him had authority to stipulate away any lawful right of the policyholders concerning such refund, or consent to the making of a court order that would have that effect. The order being void on its face, the court was not bound to follow it in adjudging restitution. Neither is the Superintendent of Insurance, as representative of the policyholders, estopped to assert the invalidity of the order, because it neither benefited him nor harmed relators. The only possible result of the enforcement of such an order would inure to the benefit of the insurance companies and not to the policyholders.

There is another reason why the court was not bound to follow this order in adjuding restitution. The order was made in the review suit but it was not included in or made a part of the judgment

in that case. Section 1072, Revised Statutes 1929, provides that every direction of a court or judge made or entered in writing and not included in a judgment, is denominated an order. We construed this statute in the case of Leavenworth Terminal Ry. & B. Co. v. Atchison, 137 Mo. 218, 37 S. W. 913. In that case the court made an order during the progress of a cause. Later, and at a subsequent term, the court set the order aside. Contention was made that the order was, in effect, a final judgment and could not be set aside at a subsequent term. In denying that contention, we said:

"We do not agree that the action of the court in setting aside the report of the commissioners was a judgment. It was no final determination of the rights of the parties. It was a mere order or direction of the court, which remained under its control, subject to be recalled or set aside at any time before the proceedings were finally disposed of. [Revised Statutes 1889, sec. 2208.]"

The order in question which attempted to detail the manner in which a refund should be made in event the rate reduction order was finally sustained, was made when the review suit was filed, but it was not included in the judgment in that case. The final judgment in that case dealt only with the validity of the rate-reduction order. In the situation presented, the order was under the control of the court at all times, and could have been set aside at any time before the case was finally disposed of. While the court did not formally set the order aside, its refusal to follow it in adjudging restitution, amounted, in effect, to a recall of the order.

■ Relators further contend that when the judgment of the circuit court was reversed and the cause dismissed by this court, the Superintendent of Insurance was restored to his rate order of which he had been deprived by the decree of the circuit court and restitution was complete.

In support of this contention, it is argued that the insurance companies did not get the excess premiums by reason of the erroneous judgment of the circuit court, and for that reason they cannot be compelled to restore such premiums upon the reversal of that judgment. A sufficient and complete answer to this contention is that by stipulation made in the cause, relators agreed to refund the excess premiums in event the rate reduction was finally sustained. That order has been finally sustained. If the stipulation bound the insurance companies to do what they agreed to do, which it did, then there is no basis for the argument that the reversal of the circuit court judgment did not entitle the policyholders to restitution of the excess premiums.

■ It is contended that the Superintendent of Insurance cannot maintain restitution proceedings as representative of the policyholders.

The contention is that the motion does not allege facts which, if

true, would authorize the Superintendent of Insurance to act as representative of the policyholders in this proceedings. In the suit to review the rate reduction order, relators treated the Superintendent of Insurance as representative of the policyholders. They agreed with him that they might collect the old premium rate from the policyholders pending the litigation. They agreed with him that in event the rate-reduction order was sustained, they would refund to the policyholders the excess premiums collected from them pending the outcome of the review suit. They also gave a bond, payable to the Superintendent of Insurance for the use and benefit of the policyholders, guaranteeing to him that they would make such refund. Having thus treated him as representative of the policyholders, they will not be heard to assert the contrary when he calls upon them to do what they agreed to do. In addition to what we have said, leading cases on strikingly similar facts sustain the authority of the Superintendent of Insurance to represent the policyholders in this proceedings. [Aetna Insurance Co. v. Hyde, 327 Mo. 115, 121, 34 S. W. (2d) 85; Ex parte Lincoln Gas Co., 256 U. S. 517, 65 L. Ed. 1070; In re Englehard & Sons Company, Petitioner, 231 U. S. 647, 59 L. Ed. 416.]

It is next contended that the court had no jurisdiction to render individual judgments against the relators under allegations of joint liability contained in the motion.

The circuit court had jurisdiction to determine whether or not the motion alleged a joint or several liability. Our conclusion is that the court had jurisdiction to render the judgment which it did render. However, we need not discuss our reasons for reaching that conclusion because the premises upon which the contention is based, if true, would not go to the jurisdiction of the court. There can be no doubt but what the circuit court had jurisdiction of the subject of restitution and of the parties. Having jurisdiction of both person and subject matter, it had jurisdiction to render *a* judgment for restitution. The judgment actually rendered, being one for restitution, it was within the jurisdiction of the court, and if erroneous, the act of the court in rendering it, was an error in the exercise of jurisdiction and not a want of jurisdiction.

It is contended that the court was without power to make the order appointing four referees and requiring relators to make a deposit of $70,000 to pay their fees and the cost and expenses of hearings held by them.

The statutes provide that the court may direct a reference in certain specified cases, and may appoint one or more referees, not exceeding three. The case in question falls within the class of cases specified in the statute in which the court would be authorized to direct a reference and appoint the required number of referees, not exceeding three. [Secs. 975, 976 and 977, R. S. 1929.] There is,

however, no authority for appointing four referees and requiring a deposit to pay their fees and the expenses of hearings held by them, in the face of a statute which limits the number which may be appointed to three.

Other questions raised by relators do not go to the jurisdiction of the court.

Our conclusion is that our provisional rule should be made absolute to the extent of prohibiting the enforcement of the order appointing four referees and requiring relators to make a deposit of $70,000, but as to all other matters, the rule should be discharged. It is so ordered. All concur, except *Leedy, J.*, not sitting, and *Ellison, J.*, absent.

## ON MOTION FOR REHEARING.

FRANK, C. J.—Relators contend that respondent did not have jurisdiction to render judgment against them without according them an opportunity to be heard in defense; ▮ that the refusal to accord relators the right to present their defense was a denial of due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

This contention is based on the following excerpts from the record:

"Thereupon relators stated that they desired to produce witnesses and had them in the court room, who would testify that, and show to the court that relators had no money, property or anything of value in their possession or control, and that the respective relators had never acquired or received anything pursuant to said judgment so the subject of supposed restitution: whereupon, the respondent stated that he would not hear said evidence but that he would appoint commissioners or masters to hear evidence and relators could then be heard. Relators objected and duly excepted to respondent's said ruling, and respondent stated that he had had in contemplation that the merits and objections to the jurisdiction should all be heard together, and that he would not hear relators further or permit the introduction of such evidence. Relators thereupon stated that witnesses were in court prepared to testify that relators had nothing whatever subject to restitution, and respondent said that he accepted counsel's statement that such witnesses were present but he would not hear them."

The record relied upon does not support the contention made. In the first place, the offer of proof was qualified and evasive. It was not an offer to prove that relators did not have in their possession or control any of the ten per cent excess premiums which they collected pending the final determination of the review suit. Whether or not relators had in their possession or control any money or property acquired pursuant to the erroneous judgment in the review suit, and whether or not they had money or property in their pos-

session subject to restitution was a question of law to be determined by the court, and not by the opinion of any witness. Respondent would have been well within the law if he had rejected the offer for the reasons stated. However, the real answer to relator's contention is that they were not denied the opportunity of being heard in their defense. The record upon which relators rely to support the contention that they were denied a hearing clearly shows that respondent stated to them that he would not hear the proffered testimony, but that he would appoint commissioners or masters and that relators could then be heard. Other parts of the record to which relators do not call attention in their motion for rehearing, show the same thing.

In the finding of facts immediately preceding the judgment, the court found, among other things, the following:

"It further appears to the court upon the evidence and record in this cause that plaintiffs have refunded certain sums of money, the exact amount unknown, to certain policyholders, but that there still remains a vast amount of money, the exact amount unknown in the possession of plaintiffs, which does not belong to them, but which belongs to the policyholders of Missouri; that said plaintiffs have not paid back or refunded any interest to such policyholders, and that such plaintiffs still retain the entire interest on all of the moneys collected."

After the finding of facts, the court's judgment concludes in the following language:

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED That the defendant's motion for restitution upon behalf of the policyholders of Missouri, be sustained; that the plaintiffs make full and complete restitution; that judgment is hereby rendered against each one of the plaintiffs herein for the amount of the principal and interest due from them as set out in this decree; that the aggregate amount of the principal due is $13,087,609.48; that the aggregate amount of the interest due from the date of illegal collections at the rate of 6% per annum is $5,586,177.57, making a total of premiums wrongfully collected and interest of $18,673,787.05, to be paid by each of the plaintiffs depositing in this court such sum of money as adjudged to be due from them, together with such interest thereon; that a master or masters will be appointed by the court in order that such plaintiffs may show what refunds or other allowable credits, if any, they have made or are entitled to and for which they will receive credit and judgment will be accordingly rendered; that such master or masters will allow such plaintiffs to have a hearing on all of the issues regarding the amount of money due from them at this time and that such master or masters will conduct such hearings and make such investigation as directed by this court; that when each and every plaintiff has fully complied with

this judgment and the other orders to be made by this court it will be fully and completely discharged from any and all liability to any one whatsoever regarding restitution; that this court will retain jurisdiction of this case to make any and all further orders which it deems necessary.''

This judgment provides, in express terms, ''that a master or masters will be appointed by the court in order that such plaintiffs may show what refunds or other allowable credits, if any, they have made or are entitled to and for which they will receive credit and judgment will be rendered accordingly; that such master or masters will allow such plaintiffs to have a hearing on all of the issues regarding the amount of money due from them at this time. . . .''

It appears from a reading of the judgment that the court not only did not refuse plaintiffs a hearing, but made express provisions that they should have a hearing, and should be permitted to show what refunds they had made, and would be given credit with such refunds and judgment would be rendered accordingly.

Relators make the further contention that the judgment shows on its face that an accounting was necessary to determine the liability of any of the respective relators, and the court was therefore without jurisdiction to enter the judgment which it did enter before an accounting was had.

This contention proceeds upon the theory that the judgment rendered was a final judgment. We do not so regard it. It is true the judgment recites that ''it is ordered adjudged and decreed that defendant's motion for restitution upon behalf of the policyholders of Missouri be sustained; that the plaintiffs make full and complete restitution, and that judgment is hereby rendered against each one of the plaintiffs herein for the amount of the principal and interest due from them as set out in this decree.'' If the court had stopped with this adjudication, no doubt it would have been a final judgment, but it proceeded to take from the judgment every element of finality by adjudging that masters ''be appointed by the court in order that such plaintiffs may show what refunds or other allowable credits, if any, they have made or are entitled to and for which they will receive credit and judgment will be rendered accordingly; that such master or masters will allow such plaintiffs to have a hearing on all of the issues regarding the amount of money due from them at this time and that such master or masters will conduct such hearings and make such investigations as directed by this court.''

A similar question was before this court en banc in State ex rel. v. Klein, 140 Mo. 502, 41 S. W. 895. We there said:

''It is perfectly manifest that the plaintiff was given no final judgment in this case. The court finds and declares the right of plaintiff to have returned to it the difference between the amount which had been paid to defendant Clark on the award of the com-

missioners and the amount of his compensation as found by the jury. It is declared 'that plaintiff is entitled to a return of the sum of $39,610,' without interest, from said Clark, and the court doth order and direct the said defendant Clark to repay to plaintiff, or into court for the plaintiff, the said sum.

"It is unnecessary to say whether, if the court had stopped at this direction, it would have constituted a final judgment, for the court proceeded to shear the declaration of all the statutory incidents of a final judgment by declaring that the amount so found due plaintiff shall not bear interest, that execution shall not issue thereon, and that no lien therefor shall attach to the real estate of defendant. Taking the whole record entry together there is no final judgment and none was intended."

This court has quoted approvingly from recognized textwriters the rule for determining whether a judgment is interlocutory or final. In State ex rel. v. Klein, supra, we said:

"A judgment, though upon the merits, or determining some substantial right, which leaves necessary further judicial action before the rights of the parties are settled, is not final."

Again in State ex rel. v. Riley, 219 Mo. 667, 691, 118 S. W. 647, we said:

"The difficulty appears to arise in relation to those decrees which, while settling the general equities of the cause, leave something for future action or determination. And the true rule seems to be that, if that which remains to be done or decided will require the action or consideration of the court before the rights involved in the cause can be fully and finally disposed of, the decree is interlocutory."

Viewing the judgment in this case from its four corners, and in the light of applicable rules of construction, it clearly appears that the court intended to determine the total amount of excess premiums collected by each company, with interest, then in later hearings determine the credits to which each company was entitled for refunds made, if any, before rendering final judgment for the amount actually due. This being true, the judgment was interlocutory for the reason that further judicial action was necessary in order to fully and finally settle the rights of the parties.

Further contention is made that when this court reversed the judgment of the circuit court in the review suit, no mandate was sent to the circuit court directing any action on its part.

We are satisfied with our disposition of this question in the original opinion. However, we will say that whether we were right or wrong in our conclusion that the certified copy of our judgment which was sent to the circuit court was a mandate, cuts no figure in this case. As said in Fleming v. Riddick's Exr., 50 Am. Dec. 119, "The power of a court to repair the injury occasioned by its own wrongful adjudication, is not derived from a mandate of the appellate forum."

In the instant case, the circuit court having occasioned the wrong by its own erroneous judgment, upon the reversal of that judgment, it had inherent and summary jurisdiction to right the wrong by awarding restitution, either with or without a mandate from this court directing it so to do. [Aetna Insurance Company v. Hyde, 327 Mo. 115, 34 S. W. (2d) 85.]

It is contended that the only thing the Superintendent of Insurance lost by reason of the erroneous judgment was his rate reduction order, and as that order was restored to him by our reversal of the erroneous judgment, restitution was complete.

We adhere to what we held in the original opinion on this question. However, as relators insist that appellant lost nothing by reason of the erroneous judgment, we will discuss the question from that angle.

In reversing the judgment of the circuit court, this court adjudged "that plaintiff be restored to all things which he lost by reason of said erroneous judgment." Relators argue that under the terms of our judgment nothing can be restored except that which was lost by reason of the erroneous judgment of the circuit court, and as the excess premiums were not collected by reason of the erroneous judgment, they were not lost by reason thereof, and are therefore not subject to restitution. It is true, the excess premiums were collected by reason of the stipulation of the parties and a court order made pursuant thereto, but neither the stipulation nor the court order determined the title to the excess premiums collected. Under the terms of both the stipulation and the court order that question was to be determined by the judgment of the court in the review suit. That is, if the judgment of the court sustained the rate reduction order, then relators were to refund the excess premiums collected. Otherwise not. The erroneous judgment of the circuit court canceled and set aside the rate reduction order. The effect of that judgment was to permit relators to keep the excess premiums collected. A judgment could not permit relators to keep the excess premiums collected, without at the same time causing the policyholders to lose such premiums. The effect of the stipulation and court order was to give relators temporary custody of the excess premiums, the title to which was to be determined in accordance with the judgment of the court in the review suit. We, therefore, hold that the policyholders lost title to the excess premiums by reason of the erroneous judgment of the circuit court in the review suit; and neither they nor the Superintendent of Insurance, their lawful representative in this suit, could maintain proceedings, either by motion for restitution or otherwise, but for the fact that we reversed the erroneous judgment of the circuit court. Independent of what we have just said, relators could be compelled to refund because they agreed to do so in event the rate reduction order was sustained.

Another view of the question. When the erroneous judgment of the circuit court deprived the Superintendent of Insurance of the rate reduction order, it necessarily took from him the right to enforce the collection of the reduced rates. Our restoration of the rate reduction order by reversing the erroneous judgment of the circuit court, necessarily restored to the Superintendent of Insurance the right to enforce the order. The remaining question is the manner of enforcement. The original opinion holds that the Superintendent of Insurance as representative of the policyholders, may enforce the reduction order by motion for restitution in the original case. We adhere to that ruling for the reasons stated in the original opinion.

Relators contend that the opinion is in error in holding that the stipulation and court order made pursuant thereto were void so far as the provisions apply against the Superintendent of Insurance, but are valid as against the insurance companies on the ground of estoppel.

The argument made concerning the question of estoppel is that estoppel to be valid must be mutual; that in order to be binding on either party it must be binding on both.

We adhere to what we said on that question in the original opinion, but in order to show that the opinion does not run counter to relators' contention, we will discuss the matter more in detail.

The opinion holds *that the part of the court order* which authorized relators to collect the excess premiums pending the review suit was void and non-enforceable when made, because in violation of Section 6284, Revised Statutes 1929, which provides that pending a suit to review a rate reduction order, the insurer shall not charge any rate of premium in excess of that fixed by the Superintendent of Insurance. The opinion also holds that as the insurance companies obtained the fruits of the invalid order by collecting, pending the review suit, the rates in force prior to the making of the rate-reduction order, they are estopped from asserting the invalidity of the order. It is clear from a reading of the opinion, that in the above holding we were dealing with that part of the order which authorized the collection of the excess premiums pending the review suit, because the opinion expressly so states. The stipulation pursuant to which the court order was made provided that relators would refund the excess premiums collected in event the rate-reduction order was sustained. When that stipulation was before the Federal District Court, 34 Fed. (2d) 185, that court said:

"The claim that the superintendent had no power to agree to collection and retention of the excess pending the stipulated review is beside the mark because the companies have received the entire benefit of that provision which is fully executed."

The opinion in that case further says:

"But the facts remain that the stipulation required repayment

of the excess collections if a particular stipulated proceeding resulted adversely to complainants; that such result occurred; that every benefit to complainants from the stipulation has been received by them; that those benefits are very substantial and they refuse to refund. Unless they do so, they will rob the other parties to the stipulation of every possible benefit therefrom, although such parties have fully performed the stipulation on their part. Such action by the complainants is highly unconscionable and should not be allowed by a court of equity.''

If, as held in the cited case, relators are estopped to assert the invalidity of the stipulation which provides that, pending the outcome of the review suit, they might collect the old rate of premium, it logically follows that they are likewise estopped from asserting the invalidity of that part of the court order which provides the same thing. The question of mutuality of estoppel has no application to this branch of the case because neither party is asserting the invalidity of that part of the stipulation or that part of the court order which authorized relators to collect the excess rates pending the review suit.

This brings us to the remaining part of the court order, which attempted to provide the manner in which refunds should be made. In the original opinion we held that this part of the order was void on its face, for the reason, among others, that it conditioned the policyholders' right to a refund, upon their making written demand therefor within ninety days from the date the insurance companies mailed them a written notice of refund. Such an order is in the teeth of the statute which provides the time limit in which claims or causes of action are barred. The order being in violation of the statute, it is against the public policy of the State and, therefore, void on its face. Such an order cannot be the basis of an estoppel. [Nichols v. Bank, 55 Mo. App. 81, 91; Sursa v. Cash, 171 Mo. App. 396, 409, 156 S. W. 779; Smith v. Smith Bros., 62 Mo. App. 596, 601-2; Wood v. Kansas City, 162 Mo. 303, 311, 62 S. W. 433.] The order being void, both parties are presumed to have known it, and there can be no estoppel where both parties have equal knowledge of the facts. [Laughlin v. Wells, 314 Mo. 474, 283 S. W. 990, 992.] This part of the order being void on its face because contrary to statute, neither party had a right to rely upon it, and neither party is estopped from asserting its invalidity. In answer to the superintendent's motion for restitution relators pleaded that they relied upon the court order and in reliance thereon expended large sums of money and was put to great trouble, inconvenience and expense in attempting to make refunds in the manner provided in the court order and in the bond given pursuant thereto; that the Superintendent of Insurance knew they were doing so, and permitted them to pursue such course without objection

on his part, and for that reason he is estopped to assert the invalidity of the court order.

The trouble with this contention is that the part of the court order which attempted to detail the manner in which refunds should be made was illegal and void because contrary to statute, and relators are presumed to have known that fact, and therefore, had no right to rely or act upon a void order. If they did, they must suffer the consequences of their own imprudence. Where, as here, the Superintendent of Insurance received nothing by reason of the illegal and void order, and did not by fraud or otherwise induce relators to change their position to their detriment, his mere silence would not breathe life into the void order or estop him from asserting its invalidity. [Sursa v. Cash, 171 Mo. App. 396, 409, 156 S. W. 799.] Relators do make the contention that attorneys representing the Superintendent of Insurance approved the order and consented to its making. Even so, that would furnish no ground for estoppel. The mere making or approval of an illegal and non-enforceable contract or order, without more, does not estop either party from asserting its invalidity. If the law were otherwise, every illegal and void contract could be enforced at the option or whim of either party thereto.

Relators further contend that where a party claims rights under an instrument he must accept all of its terms and is bound thereby. The theory of this contention is that the superintendent is bound by all the terms of the court order and is, therefore, estopped from asking that restitution be made in any manner other than that provided in the court order.

The trouble with this contention is that the superintendent's right to compel restitution does not depend upon this court order. He could compel restitution if this court order had never been made. The stipulation which is now binding on relators would compel them to make restitution. [Aetna Insurance Co. v. Hyde, 34 Fed. (2d) 185, 191.] Furthermore, if the stipulation had not been entered into, and if the court order had not been made, still relators could be compelled to restore the excess premiums collected pending the outcome of the suit to review the rate reduction order. This is so because at the time the reduction was sustained by this court, relators had in their possession excess premiums that belonged to the policyholders, which a court of equity would compel them to restore. Moreover, as held in the original opinion, the court order in question was not made a part of the judgment in the review suit. It was not a final determination of the rights of the parties, but was a mere order of the court which remained under its control, subject to be recalled or set aside at any time before the case was finally disposed of. [Sec. 1072, R. S. 1929; Leavenworth Terminal Ry. & B. Co. v. Atchison, 137 Mo. 218, 37 S. W. 913.] The court did refuse to

follow this order in awarding restitution, the effect of which was to recall the order, a thing it had a lawful right to do, because the order, not being a part of the judgment, was not a final determination of the rights of the parties. Since the court refused to follow the order in awarding restitution, it cannot be successfully argued that the order is still binding on the Superintendent of Insurance. In fact, the order had nothing whatever to do with the question of restitution.

It is contended that the judgment below unlawfully imposes such insuperable obstacles to an appeal as to deprive relators of their lawful right to review the judgment on appeal.

The claim is that the amount of the appeal bond required by the judgment would be $37,000,000, and that it is not practical to secure bonds in such sums. It is argued that the impossibility of an appeal is created entirely by the oppressive, unusual and unconstitutional provisions of the order which is essentially one for an accounting, but couples such accounting order with a money judgment of over $18,000,000. We have heretofore pointed out in this opinion that the judgment in question is interlocutory. As no appeal lies from an interlocutory judgment, the contention made necessarily drops out of the case.

Other contentions are made but they do not merit further attention than that given them in the original opinion.

We did err in holding that relators' right to challenge the authority of the Superintendent of Insurance to maintain the action was waived by failing to demur to the motion for restitution. To that extent, the original opinion is modified, and the motion for rehearing is overruled. All concur, except *Leedy, J.,* not sitting, and *Ellison, J.,* absent.