# MITCHELL *v.* FIRST NATIONAL BANK OF CHICAGO.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Argued October 11, 12, 1900. — Decided March 5, 1901.

Whatever may be the nature of a question presented for judicial determination—whether depending on Federal, general or local law—if it be embraced by the issues made, its determination by a court having jurisdiction of the parties and of the subject-matter binds the parties and their privies so long as the judgment remains unmodified or unreversed.

The case is stated in the opinion of the court.

*Mr. Theodore M. Maltbie* and *Mr. Charles E. Mitchell* for petitioner.

*Mr. Percy S. Bryant* and *Mr. William C. Case* for respondent.

Mr. Justice Harlan delivered the opinion of the court.

This is a suit upon a written guaranty held by the First National Bank of Chicago. It was signed in Connecticut by H. Drusilla Mitchell, she being a married woman, and by others, and was delivered in Chicago to the bank under circumstances presently to be stated.

The Circuit Court held that the liability of Mrs. Mitchell should be determined by the laws of Connecticut. The Circuit Court of Appeals adjudged that as the writing was delivered to the bank in Illinois, Mrs. Mitchell's liability was determinable by the laws of that State.

The case, however, presents the further question whether the precise matter in issue—the liability of Mrs. Mitchell notwithstanding her coverture at the time the guaranty was signed—was not adjudicated against the bank in the courts of Connecticut prior to the final judgment in the present case; and if so,

whether the bank was concluded by that adjudication, which remains unmodified.

The case as presented by the pleadings and by the agreed facts set forth in a written stipulation of the parties is this:

In 1891 and prior thereto the firm of Morse, Mitchell & Williams, composed of Francis E. Morse, Frederick C. Williams and George H. Mitchell, (the latter being the husband of H. Drusilla Mitchell,) was engaged in mercantile and real estate business at Chicago, Illinois, and kept an account with the First National Bank of that city.

The firm became indebted to the bank in the sum of $20,000 or more, as evidenced by its notes. The bank agreed to continue giving it credit upon the condition that the firm and its individual members, together with Mrs. Mitchell, would execute a certain paper which it had directed to be prepared.

Mitchell and his wife at the time resided in Connecticut, and did not have a residence elsewhere after their marriage, which occurred in 1857. He took the paper prepared by the bank and brought it to his residence in Connecticut and there procured his wife to sign the same, and it was thereafter by him enclosed, addressed and sent by mail to Morse in Chicago, who delivered the paper to the bank.

The paper referred to was signed by Morse, Mitchell & Williams, Francis E. Morse, Frederick C. Williams, G. H. Mitchell, and H. Drusilla Mitchell, and was as follows: "We hereby request the First National Bank of Chicago to give and continue to Morse, Mitchell & Williams credit as they may desire from time to time, and in consideration of all and any such credit given we hereby guarantee any and all indebtedness now due or which may hereafter become due from them to said bank, to the extent of thirty thousand dollars, and waive notice of the acceptance of this guaranty and of any and all indebtedness at any time covered by the same. This guaranty shall continue until written notice from us of the discontinuance thereof shall be received by said The First National Bank of Chicago. Chicago, Ill., Feb. 20th, 1891."

The bank continued to extend credit to Morse, Mitchell & Williams until the firm became insolvent and made an assign-

ment for the benefit of its creditors on the 30th day of July, 1893. At the time of such insolvency and assignment it held and owned the notes of Morse, Mitchell & Williams; renewals of unpaid portions of the above-mentioned notes, for $16,500; a note of Elizabeth Ewing endorsed by that firm; also notes of F. E. Morse & Son, with whom George H. Mitchell had no connection.

It appears that on the 28th day of December, 1893, Mrs. Mitchell notified the executor of her father that she had assigned and transferred to the bank all of her right, title and interest in so much of the testator's estate as was then undistributed, and authorized such executor to pay to the bank all money and property coming to her or to which she was entitled from that estate.

The present action was brought by the bank in the Circuit Court of the United States for the District of Connecticut on the 30th day of December, 1895, against Mrs. Mitchell and her husband. The complaint alleged that in reliance upon and in consideration of the above guaranty and promise, the bank had extended credit and advanced money to Morse, Mitchell & Williams from time to time and within the period specified in the instrument to the amount of thirty thousand dollars; and for that amount it claimed judgment.

Mr. Mitchell, by plea in abatement filed April 28, 1896, (her husband having died the month previous,) averred that at the time the above guaranty was executed, as well as at the commencement of the action, "she was a married woman, the wife of George H. Mitchell, since deceased, and was so married prior to April 27, 1877, viz., on the — day of ——— 1857, and has not entered into the contract authorized by section 2798, General Statutes of Connecticut."

The section here referred to as well as the two preceding sections are as follows:

"§ 2796. In case of marriages on or after April 20, 1877, neither husband nor wife shall acquire, by force of the marriage, any right to or interest in any property held by the other before, or acquired after, such marriage, except as to the share of the survivor in the property, as provided by law. The separate earnings of the wife shall be her sole property. · She shall

have power to make contracts with third persons, and to convey to them her real and personal estate, as if unmarried. Her property shall be liable to be taken for her debts, except when exempt from execution, but in no case shall be liable to be taken for the debts of the husband. And the husband shall not be liable for her debts contracted before marriage, nor upon her contracts made after marriage, except as provided in the succeeding section.

" § 2797. All purchases made by either husband or wife in his or her own name shall be presumed, in the absence of notice to the contrary, to be on his or her private account and liability; but both shall be liable when any article purchased by either shall have in fact gone to the support of the family, or for the joint benefit of both, or for the reasonable apparel of the wife, or for her reasonable support, while abandoned by her husband. It shall, however, be the duty of the husband to support his family, and his property when found shall be first applied to satisfy any such joint liability; and the wife shall in equity be entitled to an indemnity from the property of the husband, for any property of her own that shall have been taken, or for any money that she shall have been compelled to pay, for the satisfaction of any such claim.

." § 2798. In case of marriage existing prior to April 20, 1877, the provisions of the two preceding sections shall apply, whenever any husband and wife have entered, or shall hereafter enter, during marriage, into a written contract with each other for the mutual abandonment of all rights of either in the property of the other, under prior statutes, or at common law, and for the acceptance instead thereof of the rights in said sections provided, which contract shall be recorded in the Court of Probate of the district, and in the town clerk's office of the town in which they reside. And thereupon, said provisions shall apply to such marriage." Gen. Stats. Conn. 1888, pp. 610, 611.

It appears that at a Court of Probate, held at Bristol, Connecticut, on the 30th day of September, 1896—after the institution of the present suit in the Federal Court and after commissioners in insolvency in the probate court had made a report

on the estate of Mrs. Mitchell—Edward A. Freeman, trustee of that estate, took an appeal to the Superior Court at Hartford from "the doings of said commissioners in allowing a claim in favor of the First National Bank of Chicago "—*the same claim on which the bank brought this suit.*

In the Superior Court the bank filed a statement in which it was alleged that its claim was secured by an assignment to it of Mrs. Mitchell's interest in the estate of her father. Mrs. Mitchell filed an answer denying certain allegations in that statement and pleading among other things her coverture at the time of the signing of the writing relied on by the bank and her residence in Connecticut during all her married life and since. To this answer the bank filed a reply. The parties—the bank and the trustee Freeman—consented in writing that the case be reserved " for the advice of the Supreme Court of Errors of the State as to the judgment to be therein rendered," and *they united in requesting the Superior Court* " to so reserve the case upon the issues joined and the agreed facts." In conformity with this request the case was reserved. At the same time the parties filed in that court their agreed statement of facts.

It may be here stated that in Connecticut " questions of law may be reserved by the Superior Court, Court of Common Pleas, or District Court, in cases tried before either of them, for the advice of the Supreme Court of Errors : *Provided,* That no such questions shall be reserved without the consent of all parties to the record in such cases ; and the court making such reservation *shall*, in the judgment, decree or decision made or rendered in such cases, *conform to the advice of the Supreme Court of Errors."* Gen. Stat. Conn. 1888, p. 260, § 1114.

The Supreme Court of Errors of Connecticut advised the Superior Court to disallow every part of the claim of the bank. Speaking by Judge Baldwin it said, among other things : " Mrs. Mitchell, being a citizen of Connecticut, married a citizen of Connecticut in 1857, and they continued to reside in this State until his death. Her marriage gave her, under the laws of the State then in force, substantially the status which belonged to a married woman at common law. Her personal identity, from a judicial point of view, was merged in that of her husband.

Thereafter, during coverture, she could make no contract that would be binding upon her, even by his express authority. 1 Swift's Dig. 30. If she assumed to make such a contract, it was absolutely void. These personal disabilities the common law imposed partly for the protection of the husband and partly for that of the wife. To preserve what property rights remained to her, as far as might be, against his creditors, various statutes were from time to time enacted, until this long ago became recognized as the established policy of the State. *Jackson* v *Hubbard*, 36 Connecticut, 10, 15. These statutes were mainly designed to protect her against others. The common law was sufficient to protect her against herself, and prior to 1877 it precluded her from making any contract as surety for her husband. *Kilbourn* v. *Brown*, 56 Connecticut, 149. A statute of that year establishes a different rule for women married after its enactment, but does not enlarge the rights of those previously married. Gen. Stats. Conn. § 2796. Whenever a peculiar status is assigned by law to the members of any particular class of persons affecting their general position in or with regard to the rest of the community, no one belonging to such class can vary by any contract the rights and liabilities incident to this status. Anson's Principles of Contract, 328. If he could, his private agreements would outweigh the law of the land. *Jus publicum privatorum pactis mutari non potest.* Coverture constitutes such a status, and one of its incidents in this State at the time of Mrs. Mitchell's marriage was a total disability to contract. So far as contracts of suretyship for their husbands are concerned, the disability of women married before 1877 remains absolute unless both husband and wife have executed for public record a written contract by which both accede to the provisions of the statute of that year and accept the rights which it offers to them. Gen. Stats. § 2798. No such contract was ever executed by Mrs. Mitchell.

" The claim in favor of the First National Bank of Chicago, which has been allowed by the commissioners on her estate, was founded on a debt due from a mercantile firm in Illinois of which her husband was a member, for which she had assumed to make herself responsible, as guarantor, by a writing

dated in Illinois, but signed in this State. . . . He [the husband] sent the paper, as soon as it was completed, not to the bank, but to another of the principals. If he represented any one but himself, it was his copartners. The delivery of the paper by his wife to him, therefore, after her signature had been attached, was not a delivery to the bank, but simply purported to give him authority as her agent to make or procure such a delivery at some subsequent time. . . . Engagements which coverture prevents a woman from making herself. she cannot make through the interposition of an agent whom she assumes to constitute as such in the State of her domicil. If this were not so the law could always be evaded by her appointment of an attorney to act for her in the execution of contracts. No principle of comity can require a State to lend the aid of its courts to enforce a security which rests on a transgression of its own law by one of its own citizens, committed within its own territory. Such was, in effect, the act by which Mrs. Mitchell undertook to do, what she had no legal capacity to do, by making her husband the agent to deliver the guaranty to the bank. He had no more power to make it operative by delivery in Chicago to one of his creditors in Illinois than he would have had to make it operative here had it been drawn in favor of one of his creditors in Connecticut. It is not the place of delivery that controls, but the power of delivery. The Superior Court is advised to disallow all and every part of the claim of the First National Bank." *Freeman's Appeal*, 68 Connecticut, 533, 542.

The opinion of the Supreme Court of Errors of Connecticut was rendered February 23, 1897; and on March 2, 1897, the Superior Court in conformity with the advice of the former court entered judgment disallowing the claims of the bank against the estate of Mrs. Mitchell.

After this judgment the bank proceeded with the case commenced by it in the Circuit Court of the United States on the 30th day of December, 1895, just as if nothing had occurred in the state courts affecting its claim. Mrs. Mitchell on May 22, 1897, filed in that court a substitute plea in abatement, asking judgment in her favor, "because she signed said writing, Ex-

hibit ' A,' [the writing of February 20, 1891], at her domicil in Bristol, in the State of Connecticut, and was, at the time of signing the same, a married woman, the wife of said George H. Mitchell, to whom she was married in 1857, at said Bristol, where she has ever since resided." She also filed on May 26, 1897, an answer, alleging that she signed said guaranty at her domicil in Connecticut and not elsewhere, she being then a married woman, and stating that said copartnership at the time the alleged guaranty was signed, and prior thereto, " was indebted to the plaintiff in a large sum, viz., $25,000 and more, and the plaintiff did not thereafter give said copartnership additional credit, but such indebtedness was largely reduced." Subsequently, June 8, 1897, the parties having previously stipulated in writing to waive a jury, filed in the Circuit Court an agreed statement of facts, which did not materially differ from the one filed in the Superior Court at Hartford.

The Circuit Court of the United States gave judgment for the defendant. It referred to the above decision of the Supreme Court of Errors of Connecticut, and said among other things : "The capacity of citizens of a State, so long as they actually remain within the borders of the State, would seem to be a matter of local law, to be controlled by the laws of the State, and not to be evaded by the simple device of sending or mailing a letter to some other State. Suppose that the laws of some State should provide that infants might attain their majority and become capable of contracting at the age of eighteen years, could it be held that a minor eighteen years old in Connecticut could, by mailing a contract to that State, subject his property in Connecticut to execution against the will of his guardian and against the determination of the legislature and courts of Connecticut ? . . . In the present case, the law by which the invalidity of a contract is established is the common law, and the decisions that a married woman has capacity to make such contracts are founded upon local statutes. In these circumstances I think it is the duty of this court to follow the decision of the Connecticut court of last resort." 84 Fed. Rep. 90.

The case was carried by the bank to the Circuit Court of Appeals, in which court the judgment was reversed with in-

structions to the Circuit Court to render a judgment in favor of the bank for the amount due by the terms of the guaranty of February 20, 1891. That court, one of its members dissenting, held that the guaranty in question became effective and was to be deemed to have been made when delivered in Illinois, and that its validity as a contract was determinable by the law of that State and not by the laws of Connecticut. The court said: " We are extremely reluctant to differ with the Supreme Court of Connecticut in a case involving the same facts, between substantially the same parties, not only because the opinion of that learned tribunal is always entitled to great consideration, but also because it is, in a sense, unseemly that there should be diverse judgments under such circumstances between a Federal court sitting in that State and the highest court of the State. But the case is one which concerns the rights of a citizen of Illinois, acquired before the decision of the state court; and its decision depends, not upon the construction of local laws, but upon the application of the principles of general jurisprudence. In such cases the Federal courts are in duty bound to exercise their own independent judgment. In view of the decision of the Supreme Court of Connecticut, we should be glad to certify the question which we have thus considered to the Supreme Court for its instructions, but we do not feel authorized to do so, especially as that tribunal, under the power to issue a certiorari, can review our judgment if it sees fit." 92 Fed. Rep. 565.

In the view we take of this case it is not necessary to inquire whether the liability of Mrs. Mitchell under the writing of February 20, 1891, was determinable by the laws of Connecticut or by the laws of Illinois. If, as the bank contends, that writing became a contract when delivered to the bank in Illinois, and not before, and if, as is also contended, Mrs. Mitchell was liable thereon by the laws of that State, although she was a married woman at the time of signing the writing in Connecticut where she resided, the question remains whether the parties were not concluded by the final judgment of the Hartford County Superior Court based upon the judgment rendered in the Supreme Court of Errors of Connecticut. There can be no doubt that the identical question now presented—namely, as to the lia-

bility of Mrs. Mitchell on the writing in suit notwithstanding her coverture—arose in the Superior Court upon appeal from the allowance of the bank's claim by the Probate Court; and, as we have seen, the parties united in the request that the case be reserved for the advice of the Supreme Court of Errors of Connecticut, and the latter court upon full consideration advised the disallowance of all and every part of the bank's claim. To that advice the Superior Court, as it was compelled to do by the laws of Connecticut, conformed in its final adjudication of the bank's claim. The bank then turned to the Federal court, as if nothing had been adjudicated in the courts of Connecticut, and sought a judgment in support of the same claim that had been rejected by the state court in the case between it and the trustee of the estate of Mrs. Mitchell.

We are of opinion that the bank was concluded by the judgment in the state court. In the recent case of *Southern Pacific Railroad Co.* v. *United States*, 168 U. S. 1, 48, we said, after an extended examination of the adjudged cases, that "a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of persons and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them." The authorities cited in the margin illustrate the rule.[1]

---

[1] *Hopkins* v. *Lee*, 6 Wheat. 109, 113; *Smith* v. *Kernochen*, 7 How. 198, 216;

It is said that the question here presented was one of general jurisprudence involving the rights of citizens of different States, and that the Circuit Court was not bound to accept the views of the state court but was at liberty, indeed under a duty, to follow its own independent judgment as to the legal rights of the parties. *Burgess* v. *Seligman*, 107 U. S. 20. If it were true that the question was in whole or in part one of general law, the thing adjudged by the state court when properly brought to the attention of the Circuit Court would still be conclusive between the same parties or their privies. Whatever may be the nature of a question presented for judicial determination—whether depending on Federal, general or local law—if it be embraced by the issues made, its determination by a court having jurisdiction of the parties and of the subject-matter binds the parties and their privies so long as the judgment remains unmodified or unreversed.

It is also said that after this suit was brought in the Federal court the defendant made a voluntary assignment in insolvency under the statutes of Connecticut; that a master was appointed who took possession of all of the property assigned for the benefit of creditors; that commissioners were appointed to receive and adjust claims on her estate; and that it was necessary for the bank to present its claims to the commissioners or be forever barred from sharing in the assets of such estate. Therefore it is contended that the bank's appearance in the State court was compulsory, and that such appearance, although followed by an adverse final judgment in the state court, did not operate as a surrender of its right to thereafter proceed to final judgment in the Federal court in respect of the same matter.

These suggestions are without force. We do not suppose that the bank acquired any lien upon the property of Mrs. Mitchell

Thompson v. Roberts, 24 How. 233, 240; *Washington, Alexandria & Georgetown Steam Packet Co.* v. *Sickles*, 24 How. 333, 340, 341, 343; *Russell* v. *Place*, 94 U. S. 606, 608; *Cromwell* v. *Sac County*, 94 U. S. 351; *Campbell* v. *Rankin*, 99 U. S. 261; *Lumber Co.* v. *Buchtel*, 101 U. S. 638; *Bissell* v. *Spring Valley Township*, 124 U. S. 225, 230; *Johnson Co.* v. *Wharton*, 152 U. S. 252; *Last Chance Mining Co.* v. *Tyler Mining Co.*, 157 U. S. 683, 691; *Forsyth* v. *Hammond*, 166 U. S. 506, 518; *New Orleans* v. *Citizens' Bank*, 167 U. S. 371, 396.

merely by bringing its suit in the Federal court, or that the bringing of that suit prevented her from making such an assignment of her property for the benefit of creditors as the laws of the State of which she was a citizen permitted. It may be that the bank could not have shared in the particular estate assigned and in the custody of the trustee Freeman without presenting its claim to the commissioners. Still, if the bank had not appeared in the state court nothing that could have been done by the tribunal administering the assigned estate would have relieved Mrs. Mitchell altogether from any obligation to the bank which she had legally incurred by having signed the guaranty of February 20, 1891. The bank could have kept out of the state court and proceeded to a final judgment in the Federal court taking its chances to enforce the collection of such judgment. Instead of doing that it presented its claim to the commissioners and invoked the judgment of the highest court of Connecticut upon the question of the liability of Mrs. Mitchell notwithstanding her coverture at the time she signed the writing in question. Its appearance in the state court was not, in any legal sense, a compulsory one, but was made in its own interest for the purpose of obtaining a share of the proceeds of certain property assigned for the benefit of creditors. It united with the trustee in having the case reserved for the advice of the Supreme Court of Errors upon the question whether the coverture of Mrs. Mitchell constituted a defence against its claim; knowing, as it must be conclusively presumed it did know, that such advice when given would under the laws of Connecticut absolutely control the final action of the Superior Court. Having failed in its effort to have the state court adjudge that Mrs. Mitchell was liable on the writing in suit notwithstanding her coverture at the time of signing it, the bank cannot be permitted to relitigate that question in disregard of the final judgment against it and seek a judgment in another court which, if rendered in its favor, could rest only upon grounds which the state court had held, as between it and the trustee of Mrs. Mitchell's estate, could not, in law, be sustained. Although it does not appear that Mrs. Mitchell was, in form, a party to the proceedings in the state court, she

was in privity with the trustee who held her estate for the benefit of creditors. It was admitted at the bar that a judgment in that court in favor of the bank would have concluded the question of her liability. If the writing in suit was binding upon her, notwithstanding her coverture when signing it, then the bank was a creditor entitled to its proportionate part of the proceeds of the estate to be administered for creditors. When, therefore, the state court adjudged that the coverture of Mrs. Mitchell protected her against liability for any claim based upon that writing, and that the bank was not entitled, in virtue of its provisions, to be regarded as a creditor of Mrs. Mitchell, there was a judicial determination by a tribunal of competent jurisdiction of the material question involved in this case, and consequently the bank could not, in a suit in another court against Mrs. Mitchell, reopen that question. The Circuit Court had before it, by agreement of the parties, a copy of the record of the proceedings in the state courts; and upon the evidence furnished by that record the question was distinctly presented whether those proceedings in connection with the defendant's plea of coverture constituted a defence against the plaintiff's cause of action based upon the writing of February 20, 1891.

In our opinion, for the reasons we have given, the Circuit Court properly adjudged that the decision of the state court should control the rights of the parties in this case, and therefore that the law was for the defendant.

*The judgment of the Circuit Court of Appeals must be reversed, and the judgment of the Circuit Court is affirmed.*