**WARD COPPAGE MERCANTILE CO. v. AMERICAN INS. CO. et al.**

No. 4156.

United States District Court
W. D. Missouri, W. D.

July 15, 1949.

James T. Blair, of St. Louis, Missouri, Wm. H. Johnson, Jr., P. L. Edwards, Charles C. Madison, all of Kansas City, Missouri, for plaintiff.

E. R. Morrison, Homer H. Berger, of Kansas City, Missouri, Morrison, Nugent, Berger, Byers & Johns, of Kansas City, Missouri, of counsel, for defendants.

DUNCAN, District Judge.

Plaintiff, a resident of Missouri, filed a complaint on behalf of itself and more than 250,000 other policy holders against 137 non-resident insurance companies, in the District Court of the United States for the Western District of Missouri, Central Division, in which it sought to have returned to the custody of the court, approximately $9,800,000 alleged to have been fraudulently collected by the defendants as premiums on policies of insurance together with interest on said fund. Each of the defendants has filed a motion for summary judgment on the ground that the issues are res judicata.

The facts are not in dispute, and are to be found in the records of the court involving litigation over a period of nearly 20 years. The record shows that on December 30, 1929 the 137 insurance companies involved in this controversy promulgated an increase in premium rates of $16\frac{2}{3}\%$ on fire and windstorm insurance. On May 28, 1930 the Missouri State Superintendent of Insurance issued an order denying the increase to the respective companies. Shortly thereafter, each of the defendants in this case filed a separate action in the United States District Court for the Western District of Missouri, Central Division, seeking to enjoin the Superintendent of Insurance from interfering with each of the said insurance companies in the collection of such increased rates for fire and windstorm insurance, alleging that the existing rates were confiscatory.

In view of the fact that an order of the Missouri State Superintendent of Insurance was involved, a three-judge court was convened. This court was composed of presiding judge, Judge Kimbrough Stone, United States Court of Appeals, Judge Albert L. Reeves and Judge Merrill E.

Otis. After a hearing for a temporary injunction, orders were entered in each case stating that the companies might collect the increased rates pending the litigation; but, the amount of the increase so collected should be deposited with a custodian of the court to be appointed by the three-judge court. A special master was appointed in each case and evidence was taken concerning the fairness of the rate.

On May 18, 1935 before a final determination of any of the suits, the Superintendent of Insurance—a successor to the superintendent who was in office at the time the application for a rate increase was filed—and the insurance companies, through their agent, entered into an agreement authorizing the superintendent to make an order allowing 80% of the increase and denying 20%. This order was to be retroactive to the filing date of the suits, i. e., to May 28, 1930.

Under this agreement the impounded funds were to be distributed as provided in the agreement, and on May 21, 1935 the Superintendent made an order putting into effect the new rate. On June 22, 1935 the companies presented separate verified motions "for decree" in which it was stated that "the parties to this cause have by mutual agreement settled said cause and controversy involved therein, including the distribution of the fund impounded with the Court under its order and for a dismissal of this cause." Stipulations with respect to the distribution of the funds were at that time also filed and the motions prayed distribution in accordance with the stipulation, and for a dismissal of the various suits. These stipulations were filed in each of the 137 cases. On February 1, 1936 separate decrees were entered in each case. As set out by Judge Stone in American Insurance Co. v. Lucas, D. C., 38 F.Supp. 896, 899.: "Each decree provided (1) that 'this cause is hereby dismissed'; (2) that the impounded funds be distributed by the custodian to the persons and in the percentages set forth; (3) that jurisdiction be retained for purposes of costs, to effect the distribution, and 'over all persons or parties affected by this decree * * * for all purposes of effectuating this decree.'"

As heretofore stated, this distribution of the impounded funds was to be 80% to the companies (of which 30% was to go to Robert J. Folonie and Charles R. Street, trustees) and 20% to the various policyholders from whom the premiums had been collected. The custodian proceeded to distribute the funds in accordance with the various decrees of the court based upon the stipulation of the parties.

On January 20, 1939 Ward-Coppage Mercantile Company filed this suit, joining as defendants all of the insurance companies who were plaintiffs in the injunction proceedings heretofore described. This complaint alleges, among other things, that the collection of the increased rate of 16⅔% under the stipulation and decree was in defiance of the statutes and Laws of the State of Missouri and the opinions of the Missouri Supreme Court involving the construction of those statutes; that the excess overcharges which the policyholders were forced to pay and which were impounded by the court were at all times the property and the funds of the policy holders, and, that such funds were wrongfully and illegally withdrawn from the custody of the court and paid to the insurance companies.

In the prayer of its complaint the plaintiff asks the court:

" * * * for an order and decree finding that said entire fund impounded by this Court with its officer was at all times and is now the sole and exclusive property of the policy holders who contributed to said fund by payment to defendants of said sixteen and two-thirds percent (16⅔%) overcharges.

"Plaintiff further prays the Court to order defendants to make a full accounting to This Court for all moneys withdrawn by them from said impounded fund and further order defendants to restore to the custody of this Court such moneys *with interest thereon at the legal rate from the date or dates on which it was withdrawn by them.* (Emphasis supplied)

"Plaintiff further prays the Court to order that all of said fund now undisbursed, except that portion thereof now in process of distribution to said policy holders, be

retained intact by the Court, pending the final determination of the issues herein presented.

"Plaintiff further prays the Court to order and direct that all of said fund now in the custody of the Court and such additional moneys as may be restored to said fund by defendants, (except that portion of said fund now in the process of distribution to the policy holders under orders heretofore made by this Court), subject to proper allowances for the collection, restoration, preservation and disbursement thereof, be distributed by the Court to plaintiff and other policy holders who contributed to said fund, as hereinbefore alleged, and to each of them as his, her or its interest may appear and for such other and further relief in the premises as to the Court may seem just and equitable."

Defendants responded to the complaint by various pleadings and motions, all filed within the time provided by the rules of the court and certain of these matters were presented to the court, argued, and taken under consideration by the court.

On May 29, 1939 before any decision was made by the court in this case, the Superintendent of Insurance—the successor to the Superintendent who entered into the stipulations with the companies—filed a motion for citation against each of the companies in the original suits. Each of these motions alleged that the agreement of May 18, 1935 for settlement of the controversy and dismissal of the causes, had been procured by bribery of the then Superintendent of Insurance by the agent and representative of the companies who had negotiated the settlements. The motion also alleged that the decrees of the court based upon such stipulations and agreements had been procured by fraud upon the court, and that such orders "especially respecting the distribution of the fund, were the direct result of the fraud practiced upon this Court." Source: American Ins. Co., v. Lucas, supra. The prayer was for citations:

"To show cause, if any they have, why said decree of this Court made February 1, 1936, should not be set aside to the extent of the distribution thereof and that such decrees be so modified as to assure an ultimate distribution to policyholders of the entire fund unlawfully collected from them, giving credit for the sums paid them, and that they and each of them may be ordered and adjudged to pay to the custodian of this Court the full 80 per cent of all the said impounded fund, *together with interest at at least 6 per cent per annum since the funds were taken from such policyholders.* (Emphasis supplied.)

"2. For such other and further relief as may seem meet."

Again relying upon Judge Stone's statement of the facts in American Ins. Co., v. Lucas, supra, 38 F.Supp. loc. cit. 899, it appears:

"Counsel for the companies participated in the presentation of this motion—expressing entire willingness to return to the custodian all funds distributed by him to them and to the trustees—declaring they wished no fruits from the decrees, but reserving their rights to litigate what action this court should take after such return of funds by them.

"Upon the same day, this court entered two orders in each case. One order required restoration (by July 1, 1939) by the companies to the custodian of all funds distributed by him to the companies and to the trustees under the decrees. The other order required the companies (by June 15, 1939) to show cause 'Why all the funds which have been ordered to be returned by it to the Custodian, Wm. T. Kemper, Jr., heretofore appointed in this cause under order of this Court on this date, as well as all other sums of money in the hands of said Custodian, should not be distributed to the proper policyholders and this cause dismissed at the cost of the plaintiff, including the cost of such distribution to such policyholders.'"

Restitution was made in accordance with the order of the court and a special master was appointed to take testimony concerning the alleged fraud. With respect to interest, Judge Stone, in American Ins. Co. v. Lucas, supra, 38 F.Supp. loc. cit. 925 said: "They should not pay interest upon funds going to the trustees which never passed to the com-

panies but should pay any earnings upon such funds which earnings have passed to them from the trustees. If the interest on the particular money and securities so passing to each company can be followed, that amount should be the recovery. If such interest cannot be thus followed, it should be computed as at the average rate of earnings by the company on invested money during the period the company had the funds. The interest term should be from the date of receipt of the money or securities by the company to the date of the return thereof to the custodian. If any company and the Superintendent file in this court an agreement as to the amount of such interest due, the court will accept such statement unless reason to do otherwise shall appear. In the absence of such agreement, determination of such interest will be referred to the master or otherwise determined as may seem best."

Interest was computed by taking the average earnings by each company on invested money during the period the company had the funds. This rate was found to be 3.865%, but certain adjustments and credit allowances were made, reducing the interest rate to 2.876%. The court accepted these computations and on February 11, 1944 entered an order directing the companies to pay that amount to the custodian. This amount was added to the other fund and distributed to the policyholders.

The instant case was transferred by Judge Collet (then a District Judge) to the three-judge court for consideration along with the other matters being considered by it in connection with the recovery and distribution of the impounded fund. However, no action was taken by the three-judge court on this case, and subsequent to its judgment determining that the impounded fund belonged to the policyholder, this cause was re-transferred to Judge Collet.

The issues now before this court involve the payment of interest only. All of the impounded funds which the plaintiff sought to have returned to the court's custodian were returned under order of the court issued pursuant to the motion of the Super-

intendent of Insurance, and the interest which the plaintiff now seeks to recover is the difference between the legal rate of interest, 6%, and 2.876%. This comes to 3.124% interest on $9,800,000 for a period of 3.38 years, amounting to approximately $1,000,000.

## Contentions.

Defendants insist that the issues raised by the pleadings are res judicata, i. e., that the judgment of the three-judge court determining the ownership of the funds and the amount of interest to be paid by defendants is determinative of the issues raised by plaintiff's complaint.

On the contrary, plaintiff contends that the Superintendent of Insurance had no authority to represent the policy holders so far as the amount of interest due was concerned; and, that the three-judge court in the prior proceeding between the insurance companies and the Superintendent of Insurance was a court with limited jurisdiction to determine only whether the insurance rates were confiscatory and unconstitutional. Plaintiff also contends that the issues raised in its complaint and the issues determined by the three-judge court were not the same, nor are the parties the same, and for that reason, the rule of res judicata does not apply.

## Conclusions.

It seems to me, under the statement of facts, that the only questions for determination are (1) whether or not the Superintendent of Insurance was representing the policy holders in filing the motion to recapture the funds collected under the decree of the court of February 1, 1936 and (2) whether or not the court had jurisdiction to fix the amount of interest.

Assuming the affirmative of these two questions, a third question arises: Were the issues presented by the motion of the Superintendent of Insurance for the recovery of the fund and its distribution, and the issues of plaintiff's complaint, the same?

Plaintiff contends that the Superintendent did not represent the policy holders in any other capacity than the fixing of the rate, i. e., for a determination of whether

or not the rate was confiscatory; that he was not authorized under the law to bind the policy holders with respect to any agreement concerning the rate of interest.

I think there can be no dispute or disagreement with the proposition that the Superintendent of Insurance cannot waive or contract with respect to the established fixed rights of the policy holders. State ex rel. and to Use of Abeille Fire Ins. Co. v. Sevier, 335 Mo. 269, 73 S.W.2d 361. Certainly the Superintendent of Insurance has the authority to represent the policy holders in the liquidation of insurance companies. State ex. rel. Lucas v. Blair, 346 Mo. 1017, 144 S.W.2d 106, 109.

In this case there are more than 250,000 policy holders who own in excess of one million policies of insurance. Certainly it would be highly impractical for these policy holders to be required to present their objections to an increase in rates or to assert their rights with respect to any fund that may have come into the custody of a court as a result of the illegal collection of rates. Such actions do not readily lend themselves to class actions, because, as here, where there are 137 insurance companies involved, the 250,000 policy holders do not all have policies in the same company, but their policies are distributed among the various companies. Probably many of those policy holders do not have policies in more than one company, whereas other policy holders may hold policies in a number of companies. Therefore a large number of policy holders would have no interest whatsoever in the dispute between one group of policy holders and a group of insurance companies or an individual company. Supporting this view are State ex rel. and to Use of Abeille Fire Ins. Co. v. Sevier, supra, and Aetna Ins. Co. v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164.

I think the Superintendent of Insurance in filing the motion for the restoration of the funds into the possession of the custodian was representing the policy holders.

If the superintendent did represent the policy holders, he represented all of them before the court in his motion for the recovery of the fund. If any policy holder was dissatisfied, he had the right to intervene. No policy holder did intervene or seek to do so, in the manner provided by law, and they are now bound by the actions of their representative.

Even taking plaintiff's view that the Superintendent is without authority to agree as to the rate of interest, the same conclusions may be reached. In this case, the superintendent apparently did not agree upon the rate of interest. He simply performed the administrative function of determining the average rate of interest during the period when the funds were out of the custody of the court, and reported that rate to the court. The court accepted his computation, and then entered its own decree, fixing the amount.

We next come to the question of the court's jurisdiction. The three-judge court, as a court of equity, had jurisdiction to recover the fund which was wrongfully taken from its possession through the fraudulent misrepresentations of the companies, and also to recover the additional amounts collected by the companies prior to its return.

Plaintiff contends that the court's jurisdiction extended no further than its statutory authority to determine whether or not the rate was confiscatory. At the time this action was brought, the three-judge court had been convened and had been exercising jurisdiction over the 137 companies for approximately nine years. Its actions were approved by the Court of Appeals for the Eighth Circuit in American Ins. Co. v. Scheufler, 129 F.2d 143.

As stated above, none of the policy holders sought to intervene in the manner provided by law in any of the proceedings before the three-judge court. Probably some effort was made to intervene by some policy holder for and on behalf of himself and others, but quite properly the court held that the policy holders had no right to intervene as a class, but ruled that any policy holder should have the right to intervene with respect to any matter before the court.

During all of the proceedings, up to and including the final order of distribution in 1944, the jurisdiction of the three-judge

court was never questioned by this plaintiff or by any other individual policy holder, with the possible exception of a criminal case in which the Superintendent of Insurance in office when the stipulation was filed, was a defendant.

Plaintiff has not questioned the right of the court to order a return of the funds which were obtained by the defendants as a result of fraud. In fact, in the prayer of its complaint, it seeks to have the funds returned to the custodian of the court whose jurisdiction it now questions. It does not question the jurisdiction of the court in that respect, but on the contrary, seeks to invoke the authority of the court to make the distribution. It denies the jurisdiction of that court only with respect to its right to fix and determine the rate of interest.

The three-judge court admittedly had the right to administer the fund. It seems to me that this contention of the plaintiff is entirely inconsistent with its own actions with respect to the fund and its attitude toward the three-judge court. It appears to me to be clear that the three-judge court had jurisdiction to fix and determine the amount of interest the companies were to pay on the fund during its improper possession.

Having answered the first two questions in the affirmative, we next come to the third question—res judicata. To answer this question, we must determine whether or not the allegations of the plaintiff's complaint and the issues before the three-judge court were the same, or were so similar as to be determinative of the questions raised in plaintiff's complaint.

There is no dispute among the parties as to the law respecting res judicata. The rule is expressed in George H. Lee Co. v. Federal Trade Commission, 8 Cir., 113 F.2d 583, 586. In the opinion, Judge Sanborn quotes the following with approval: " * * * 'that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action,

the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.' Southern Pac. R. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 27, 42 L.Ed. 355; Mitchell v. First National Bank, 180 U.S. 471, 480, 481, 21 S.Ct. 418, 45 L.Ed. 627; Tait v. Western Maryland Railway Co., 289 U.S. 620, 623, 53 S.Ct. 706, 77 L.Ed. 1405."

The prayer of plaintiff's complaint, although spelled out in greater detail, seeks exactly the same relief as does the motion of the Superintendent of Insurance filed in the cases in which the fund was distributed. The plaintiff asks the court for an order decreeing that the entire fund impounded by the court was at all times the sole and exclusive property of the policy holders; that defendants be required to make full accounting of all the moneys withdrawn from the impounded fund; and, that it be restored to the custody of the court with interest at the legal rate from the date or dates upon which it was withdrawn by them. These allegations represent the principal issues under plaintiff's complaint. The motion of the Superintendent of Insurance for citation to show cause is set out above.

Thus it appears that everything the plaintiff seeks in its complaint is sought in the motion of the Superintendent of Insurance, i. e., that the money be returned to the custody of the court; that it ultimately be distributed to the policy holders; and, that interest at the legal rate of 6% be collected upon the fund.

I am unable to distinguish any difference between the relief sought by plaintiff and that sought by the Superintendent. The parties were before the court through their representative, the Superintendent of Insurance; the court was vested with jurisdiction; and, the issues were the same and a determination of those issues by the three-judge court was res judicata as to the issues raised in plaintiff's complaint.

The motion of each defendant for summary judgment must therefore be, and is hereby sustained.