ON MOTION FOR STAY OF PROCEEDINGS
SPECTOR, Judge.
Appellants have filed an extraordinary motion by which they seek an order of this court staying the interlocutory injunctive *73 order which is the subject matter of this interlocutory appeal. As grounds for the relief requested, appellants advise that failure to stay the lower court’s order will result in an unseemly confrontation between the United States District Court for the Northern District of Florida and the Circuit Court of the Fourteenth Judicial Circuit in and for Bay County, Florida. An earlier motion for supersedeas was denied by this court on April 21, 1970, which opinion is reported at 234 So.2d 420. At that time, however, no representations were made regarding a collision between the state and federal courts as is now asserted.
The state trial court found in its interlocutory order of April 6, 1970, that the appellants are in the business of selling obscene books and magazines. Pursuant to its finding of obscenity and ruling that continued sale of such materials constituted a nuisance, the court below entered its in-junctive order prohibiting appellants from continuing the sale of such obscene materials and from using the premises for the purpose of conducting such sales. Immediately upon the rendition of said injunctive order, appellants filed their notice of appeal seeking to have reviewed in this court the order entered against them. Additionally, appellants sought and received an expedited hearing in this court on their motion for supersedeas which, as we said above, was denied on the grounds that the trial judge’s denial of supersedeas was quite within the discretion vested in him by law in view of the evidence considered at the hearing preceding his order. The case then progressed here to oral argument and the filing of appellants’ present motion for a stay order.
Appellants advance quite extraordinary grounds in support of their motion. They assert that if the lower court’s order is not stayed, a confrontation between a state circuit judge and a federal district court judge is imminent. Both judicial officers occupy a relatively similar position in the respective judicial systems which they serve. Both are trial courts of general original jurisdiction, the principal dissimilarities being that the federal district courts have jurisdiction to try numerous misdemeanors established by congressional acts, whereas the state circuit courts are not vested with authority to try state misdemeanors. The state circuit courts are however vested with final appellate jurisdiction to review judgments in all civil and criminal cases arising in the county court, or before county judge’s courts, misdemeanors tried in criminal courts of record, and all cases arising in municipal courts, small claims courts and courts of justices of the peace. Article V, Section 6(3), Florida Constitution, F.S.A.
Appellants’ motion asserts that on May 6, 1970, the State of Florida by its agents, who are the appellees in this case, was served with a complaint filed in the United States District Court for Northern District of Florida, Marianna Division, Civil Action File No. 799, seeking injunc-tive relief against the appellees herein, who are the named defendants in the federal case. Appellants’ motion has attached to it a copy of an order entered by United States District Court Judge Winston E. Arnow, which was entered pursuant to the complaint filed by appellants in his court, purporting to restrain the sheriff and prosecuting attorney or all persons acting with or for them from enforcing or seeking to enforce the order dated April 6, 1970, entered by Honorable W. L. Fitzpatrick, Circuit Judge of the Fourteenth Judicial Circuit for the State of Florida in and for Bay County. It is Judge Fitzpatrick’s order that is presently being reviewed on appeal in this court. Judge Arnow’s federal court order purportedly restraining enforcement of the state court order was entered on May 12, 1970, not only after the appellants sought reversal in this court of Judge Fitzpatrick’s order, but also after we entered our order of April 21, supra, on appellants’ first motion on the supersedeas question.
By the filing of its complaint against appellants on March 30, 1970, and service *74 upon them of a notice of hearing and subpoena duces tecum on the next day, the dispute between the parties was tendered to and placed in the jurisdictional bosom of the Circuit Court in and for Bay County, Florida. The day following the entry in the lower court on April 6, 1970, of an adverse order, appellants filed their notice of appeal thereby tendering to the jurisdiction of this court their dispute with the State of Florida as it was affected by the interlocutory order being appealed. After unsuccessfully seeking supersedeas relief as related above in this court, appellants on April 30, 1970, filed their complaint in the federal court alleging that Florida’s obscenity and nuisance statutes are unconstitutional and seeking a federal injunction against the enforcement or attempted enforcement by the State of its obscenity statute and more particularly seeking an injunction against any further prosecution by the State of the action filed by it in state court on March 30, 1970, and further, enjoining the Prosecutor and Sheriff of Bay County and anyone acting in their behalf from enforcing Judge Fitzpatrick’s interlocutory injunctive order of April 6, 1970.
Appellants’ motion further avers that Judge Fitzpatrick sua sponte has issued a rule to show cause why these appellants should not be held in contempt for violation of his order enjoining the sale of obscene materials, notwithstanding that he has received notice of Judge Arnow’s order purportedly restraining enforcement of the state court order. Because of Judge Fitzpatrick’s indicated intention to enforce the orders of his court, appellants state that it became necessary to amend their complaint so as to seek an order restraining Judge Fitzpatrick in the same manner that the prosecuting attorney and the sheriff were earlier restrained by the federal judge’s order of May 12, 1970.
On June S, 1970, two days after appellants presented the instant motion, a hearing was held in Pensacola, Florida, before United States District Court Judge Arnow on appellants’ motion to add Judge Fitzpatrick as a defendant in the federal action. On June 4, Judge Fitzpatrick sought and obtained an order of this court temporarily relinquishing the obscene materials which were introduced in evidence at the hearing held by him and on which he based his finding of obscenity and which formed the basis of his temporary injunctive order. The materials were requested by him for the purpose of displaying them to Judge Arnow at the June 5 hearing, presumably for the purpose of demonstrating to Judge Arnow that he was fully justified in holding the materials obscene, thus negating any possible contention that his state court injunctive order was entered in bad faith. Judge Fitzpatrick’s return of the exhibits to this court, filed on June 12, 1970, states that Judge Arnow refused to look at the exhibits for the purpose of observing or ascertaining their nature or content because in his belief the nature or content of the exhibits were immaterial to the question of whether Judge Fitzpatrick should be made a party to appellants’ federal action and be placed under a federal court order restraining him from enforcing his own orders.
On June 5, 1970, the unseemly collision that appellants asked this court to prevent occurred. However, it was not a collision between United States District Court Judge Arnow and Florida Circuit Judge Fitzpatrick as feared. Instead, it was a head-on collision between Judge Ar-now and the United States Constitution and the Federal Anti-Injunction Act, 28 U.S.C.A. § 2283. On that day, Judge Ar-now entered a temporary restraining order by which Judge Fitzpatrick was restrained from holding an already scheduled hearing on his rule to show cause why appellants should not be held in contempt and further restraining Judge Fitzpatrick from enforcing the temporary injunctive order entered by him against appellants on April 6, 1970, which order is presently on appeal in this court.
*75 28 U.S.C.A. § 2283, reads as follows:
“A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.”
Judge Arnow rests the legality of his order against Judge Fitzpatrick on Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Sheridan v. Garrison, 415 F.2d 699 (5th Cir.1969); and Kingsley Books, Inc. v. Brown, 354 U.S. 436, 443, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). The cases relied on by the learned federal judge simply do not authorize or justify his unprecedented action. Kingsley did not involve a § 2283 question. That case was a proper appellate review of a judgment of the New York Court of Appeals by the United States Supreme Court in which a conviction under New York’s obscenity statute was affirmed as against a claim that the statute contravened the First Amendment of the United States Constitution.
Dombrowski is equally inapplicable. There the United States Supreme Court held that § 2283 did not bar an injunction against the institution of state court proceedings but only barred stays of suits already instituted. In the instant case, unlike Dombrowski, not only had proceedings been “already instituted” but an interlocutory injunctive order was in this appellate court and the briefs of both sides had been filed and oral argument heard by the court. In Dombrowski, the federal action preceded the state action. Here, the reverse is true. In Dombrowski, there was no proceeding pending in the state court. There were only threats of criminal prosecutions by the state and the court held that such threats of prosecution were not a “proceeding” within the meaning of § 2283, thus rendering the anti-injunction statute inapplicable. Here, there was no mere threat of the institution of an action by the state. Rather, there is pending in this court, a court of final appellate jurisdiction of this state, a full and complete interlocutory appeal with briefs and oral arguments completed. In Dombrowski, there were claims and evidence of bad faith and harassment by threatened state prosecutions. Here, there is not a scintilla of evidence to support a claim of bad faith. Dombrowski is similar to the case at bar only in two respects; viz., both cases involve First Amendment issues and the facts in both cases transpired in the United States.
Sheridan v. Garrison, supra, is equally lacking in controlling effect but is probably at the root of Judge Arnow’s difficulty with § 2283. Sheridan construes the anti-injunction statute as an expression of comity between the federal and state judicial systems. Sheridan was of special meaning to the federal district court judges in Florida since it emanates from the Fifth Circuit Court of Appeals which has supervisory appellate jurisdiction over such judges. The Sheridan court had no difficulty settling on the comity nature of § 2283, for based on such a construction the court empowered itself to act in a continuing supervisory capacity of the respective state judicial systems within its bailiwick. The direction thus set was followed by the federal district court judges, and the result is that the smut peddlers are experiencing a veritable bonanza throughout the State of Florida. Police, prosecutors, and state judges alike are stymied in their duties because somehow Judge Arnow and his colleagues have been convinced that tomorrow will bring forth a decision of the United States Supreme Court which will clothe hard-core obscenity with the protection of the First Amendment.
Without commenting on the juridical soundness of deciding cases today on the authority of what may be the law tomorrow, we can only observe that no case has been decided by any court, whose decisions are binding on the courts of this state, which holds that obscenity is protected by the First Amendment. Whether giv *76 en materials are in fact obscene is to be decided by state courts subject only to the proper supervision of the United States Supreme Court.
§ 2283 is not a statute of comity. Only last week, on June 8, 1970, the United States Supreme Court in Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234, rejected the contention of the respondents who sought to uphold a Florida United States District Judge’s injunction staying a state court proceeding on the ground that § 2283 only establishes a “principle of comity” not binding on the power of the federal courts. In Atlantic Coast Line Railroad Company, supra, the court in an opinion written by Mr. Justice Black made the following observations concerning § 2283:
“ * * * In 1954 when this Court interpreted this statute, it stated: ‘This is not a statute conveying a broad general policy for appropriate ad hoc application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions.’ Amalgamated Clothing Workers v. Richman Brothers, 348 U.S. 511, 515-516, 75 S.Ct. 452, 455, 99 L.Ed. 600 (1955).” 398 U.S. 287, 90 S.Ct. 1743.
The respondent’s contention that Section 2283 only establishes a principle of comity —and such was the holding of Sheridan, supra, on which Judge Arnow relies so heavily — was unceremoniously rejected by the following unmistakable language: “We cannot accept any such contention.” (398 U.S. 287, 90 S.Ct. 1743)
“First, a federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law, even when the interferences is unmistakably clear. * * * Again, lower federal courts possess no power whatever to sit in direct review of state court decisions. * * * Unlike the Federal District Court, this Court does have potential appellate jurisdiction over federal questions raised in state court proceedings, and that broader jurisdiction allows this Court correspondingly broader authority to issue injunctions ‘necessary in aid of its jurisdiction.’ (Emphasis supplied)
“* * * Any doubts as to the'propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion." (Emphasis supplied.) 398 U.S. 297, 90 S.Ct. 1748.
While the above excerpts taken from the Supreme Court’s decision in Atlantic Coast Line Railroad Company vacating a Florida district court judge’s injunction entered in violation of Section 2283 are in our view dispositive of appellants’ motion that the Florida state courts step aside and defer to the federal district court, we must emphasize that such a conclusion would have been reached by this court on the basis of United States . Supreme Court decisions rendered prior to Atlantic Coast Line Railroad Company, supra.
In Norwood v. Parenteau, 228 F.2d 148 (8th Cir.1955), the court rejected appellant Norwood’s efforts to supersede the decision rendered by the Supreme Court of South Dakota by instituting an action in the United States District Court of that state. In so ruling, the Court of Appeals said:
“Where an adequate state remedy is available and that remedy is employed, the party using it cannot escape the results of the action by a mere change from state to federal courts. * * * The state action is res judicata to all subsequent actions; there is left only appeal to the United States Supreme Court *77 under Title 28 U.S.C. § 1257. American Surety Co. v. Baldwin, 1932, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231; Mitchell v. First Nat. Bank of Chicago, 1901, 180 U.S. 471, 21 S.Ct. 418, 45 L.Ed. 627; * *
“ ‘Congress * * * has maintained upon the statute hook such provisions as it deemed needful for reviewing judicial proceedings in the state courts involving a denial of federal rights, but has confined them to a direct review by this court, and deferred this until final judgment or decree in the state court of last resort.’ Essanay Film Mfg. Co. v. Kane, 1922, 258 U.S. 358, 361, 42 S.Ct. 318, 319, 66 L.Ed. 658.
******
“ ‘Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character. Judicial Code, § 237, as amended by Act Sept. 6, 1916, c. 448, § 2, 39 Stat. 726. To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original. Judicial Code, § 24.
“A federal court cannot enjoin the action of a state court at any stage of the proceedings except as expressly authorized by Act of Congress or where necessary in aid of its jurisdiction or to protect or effectuate its judgments. 28 U.S.C. § 2283. This prohibition ‘is comprehensive. It includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process.’ Hill v. Martin, 1935, 296 U.S. 393, 403, 56 S.Ct. 278, 282, 80 L.Ed. 293. The state court cannot be ignored. Lion Bonding [& Surety] Co. v. Karatz, 1923, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871.”
While the excerpts from the majority opinion of Mr. Justice Black in the Atlantic Coast Line case quoted herein above are dispositive of the issues raised by appellants’ motion for a stay order, we think it appropriate to observe that the rights sought to be vindicated by the respondents in Atlantic Coast Line were First Amendment rights more closely protected by the Federal Constitution than the purported First Amendment rights in the case at bar. Freedom of speech by the maintenance of a picket line by respondent labor union was at the heart of the Atlantic Coast Line case. The purported First Amendment right sought to be vindicated by appellants in the case at bar is that freedom of expression or thought inherent in the debasement and defilement of nature’s most wondrous gift bestowed on mankind — the defilement of that process by which the human race is reproduced. This court cannot hold that the framers intended to accord broader protection to hard-core obscenity by the First Amendment than that provided to union members to peacefully maintain a picket line to express their views in an economic dispute with management.
The historical discussion of the federal anti-injunction statute, 28 U.S.C.A. § 2283, received the attention of the United States Supreme Court in Toucey v. New York Life Insurance Company, 314 U.S. 118, 129-132, 62 S.Ct. 139, 86 L.Ed. 100 (1941), and again in Atlantic Coast Line Railroad Company, supra. In the latter case, we are reminded that the predecessor of Section 2283 was initially enacted by the Congress in 1793 in the beginning days of this nation’s history. The court discussing the background and policy which led Congress to pass the anti-injunction statute stated:
“ * * * While all the reasons that led Congress to adopt this restriction on federal courts are not wholly clear, it is certainly likely that one reason stemmed from the essentially federal nature of our national government. When this Nation was established by the Constitution, each State surrendered only a part of its sovereign power to the national government. But those powers that *78 were not surrendered were retained by the States and unless a State was restrained by ‘the Supreme Law of the Land’ as expressed in the Constitution, laws or treaties of the United States, it was free to exercise those retained powers as it saw fit. One of the reserved powers was the maintenance of state judicial systems for the decision of legal controversies. Many of the Framers of the Constitution felt that separate federal courts were unnecessary and that the state courts could be entrusted to protect both state and federal rights. Others felt that a complete system of federal courts to take care of federal legal problems should be provided for in the Constitution itself. This dispute resulted in compromise. One ‘supreme court’ was created by the Constitution, and Congress was given the power to create other federal courts. In the first Congress this power was exercised and a system of federal trial and appellate courts with limited jurisdiction was created by the Judiciary Act of 1789, 1 Stat. 73.
“While the lower federal courts were given certain powers in the 1789 Act, they were not given any power to review directly cases from state courts, and they have not been given such powers since that time. Only the Supreme Court was authorized to review on direct appeal the decisions of state courts. Thus from the beginning we have had in this country two essentially separate legal systems. Each system proceeds independently from the other with ultimate review in this Court of the federal questions raised in either system. * * * ” 398 U.S. 286, 90 S.Ct. 1742.
We have indulged in the lengthy quotation from Atlantic Coast Line Railroad Company, supra, because it reassures us that this nation is still a republic consisting of a close union of fifty separate states, each of which is still possessed of such powers not surrendered to the national government. The Tenth Amendment of the United States Constitution provides:
“The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.”
We are in full accord with the United States Supreme Court’s reassertion that the principles of the Tenth Amendment. are fully applicable to the maintenance of two essentially separate judicial systems by the state and federal governments.
Appellants’ motion to stay Judge Fitzpatrick’s order pending determination of the issues in this cause by Judge Arnow was misdirected by appellants to this court. It properly should be presented to Judge Ar-now for his consideration pending determination of the issues in this cause by the state courts.
The motion is denied.
CARROLL, DONALD K., Acting C. J., and WIGGINTON, J., concur.